### SAMUEL L. BLATCHLEY *vs.* JOHN J. OSBORN.

Where the owner of land charged with an equitable incumbrance sells it, and informs the purchaser that no such incumbrance exists, the latter yet takes the land subject to the charge if he at the time of purchasing had knowledge of the facts from which the equitable incumbrance was derived, although he paid full value, after searching into the record title and finding it clear, and in the belief that no such incumbrance could be enforced in law or equity.

*A, B* and *C* in equal shares owned land in common, a portion of which was charged, as against them, with an equitable incumbrance not appearing on record. *A* sold out his undivided interest to *D*, who purchased without notice, in good faith and for full value, and *B* subsequently sold out his undivided interest to *E*, a purchaser with notice, though for full value. *C, D* and *E* subsequently made an amicable and equal partition of the land, (*D* still having no notice of the incumbrance,) by an exchange of deeds, the part set to *E* including the whole of the incumbered portion, and being estimated at its full value without allowance for the incumbrance. Upon a bill in equity brought against *E* to establish the incumbrance, it was held, that he could not take advantage of the want of notice on the part of *D*, to protect his title to the part now owned by him in severalty.

BILL IN EQUITY. On July 1st, 1860, the petitioner, who owned a building lot on State street in the city of New Haven, bounded on the north side and rear by land known as the Judson lot, and owned in common by James A. Wood, William I. Benton and George W. Goodsell, entered into an oral agreement with them that a passway should be opened for the

common benefit of all, running back one hundred and fifty feet from the street to the line of the rear of his lot. The passway was to be nine feet wide, one-fourth of the necessary land to be contributed by the petitioner and the remainder by the other three parties, and proper deeds were to be exchanged so as to vest in the proprietors of both lots forever the right of way over the two adjoining strips of land thus thrown together. This agreement was immediately afterwards fully performed in all respects except the exchange of deeds. The petitioner threw out a strip of land from the northern border of his lot, two feet and three inches in width and one hundred and fifty feet deep; the other parties threw. out a strip from the adjoining portion of their lot, of the same depth, and six feet and nine inches wide, and an entrance way from the street to the passway was paved at the joint expense of all. The petitioner proceeded at once to erect an expensive and permanent building upon his land, the side of which was directly on the edge of the passway; several of its windows and one door opened immediately upon the passway, and this furnished the only access to the cellar of the building for wagons and teams. In 1863 he built a brick barn on the rear of his lot at an expense of about $1,500, to which also the passway furnished the only access for wagons and teams. The land fronting upon the street at this point is worth at least $200 a foot, and the strip thrown out by the petitioner is of no use to him, except as forming part of the passway, and except also as giving room for a foot-path along the side and to the rear of his lot. In constructing the building and barn he acted upon the faith of the agreement regarding the passway, not doubting that it would be carried into effect. Wood, Benton and Goodsell knew that he was making these improvements with this expectation and reliance, and that he would suffer great loss if the agreement was not carried into effect, but acquiesced in his proceedings and interposed no objection whatever.

During this time Wood, Benton and Goodsell extended and enlarged a building on their own lot, putting up a brick bakery as an addition in the rear, and also building a barn

behind it.  For the purposes of access to and from the rear of their building and the barn and land adjacent, the whole of the passway, from the time when the agreement was made up to the time of trial, was freely used by Wood, Benton and Goodsell and their assigns, without objection or hindrance from the petitioner, who also used the same freely for access to the rear of his own lot and to the side of his building without objection from any one until he was obstructed by the respondent.

On July 26th, 1862, Benton conveyed by quitclaim deed all his interest in the Judson lot to Cornelia Bunnell, who purchased it in good faith, for a valuable consideration, and without knowledge of the agreement with the petitioner. She purchased the property with no other information respecting the title than from Benton's representations, and during her ownership he had the entire care and management of it as her agent.

On August 20th, 1864, the respondent, with full knowledge of all the facts, and that the petitioner claimed to own under the agreement the right for himself and his heirs to use the passway forever, bought from Wood, for a valuable consideration, his interest in the Judson lot, receiving a warranty deed purporting to convey the same free from all incumbrance. Before purchasing the respondent, after being informed by the petitioner of all the facts, inquired of Wood, Benton and Goodsell in relation thereto, and was informed by each of them that the petitioner had no such right of way, and that they had never made any such agreement with him.  The respondent employed competent counsel to examine the land records of New Haven, and received from him a certificate that the land appeared upon the records to be free from all incumbrance.  Rejecting the statements made to him by the petitioner, and relying on the statements of Wood, Benton and Goodsell, and upon the certificate of his counsel, and believing that Wood could convey to him a clear title, and that the petitioner had no right legal or equitable which he could enforce by legal proceedings, the respondent purchased the

land and paid therefor its full value, no deduction being made on account of the petitioner's claim.

Soon after this Mr. Goodsell, Miss Bunnell, and the respondent, then owning the Judson lot in common, agreed to make a partition of it, and appropriate deeds were executed and exchanged, by which the respondent for his share became vested in severalty with the title to a part of the lot adjoining the petitioner's land, twenty feet and three inches in width, and including the whole of the strip thrown out by Wood, Benton and Goodsell to make up the passway. In this partition no reference whatever was had by the parties to any claim which the petitioner might have to a right of way over any portion of the land aparted, and no allowance or deductions of price was made to the respondent on account of it.

From time to time, before the respondent acquired any interest in the Judson lot, the petitioner requested Wood and Benton to cause a proper deed to be executed by themselves and Goodsell in his favor, according to the agreement, offering at the same time to execute a proper one on his part in their favor ; but for various reasons the formal execution of the deeds was from time to time postponed, and they were never executed. After the partition, in April, 1865, the petitioner notified the respondent of his readiness to carry into effect with him the agreement originally made with Wood, Benton and Goodsell, requested him to join in carrying it into effect, and, having prepared deeds for the purpose of conveying to each the right of way over that part of the passway owned by the other, one from himself to the respondent, and one to himself from the respondent, executed the former of these deeds and tendered both to the respondent, requesting him to execute and deliver the latter. The respondent, without objecting to the form of either deed, refused to accept the one or to execute the other, on the ground that the petitioner had no right of way over any part of his land. About the same time he proceeded to shut up that part of the passway covering his land by placing obstructions thereon, threatening and intending to maintain such obstructions permanently.

The bill prayed for an injunction, and a decree that the

respondent execute and deliver to the petitioner a proper deed for carrying out the original agreement. The case was reserved for the advice of this court upon a special finding embracing the facts above stated.

*Harrison* and *Morris*, for the petitioner.

The agreement of 1860, together with the acts done by all the parties to it in performance, made the petitioner the owner in equity of the right of way claimed by him and charged it upon the Judson lot. *Eaton* v. *Whitaker*, 18 Conn., 222, 229. And the respondent purchasing with notice, took only an interest in the land as charged with the equitable incumbrance in favor of the petitioner. 2 White & Tud. Lead. Cas. in Eq., 32 to 49; Adams' Eq., 151, 152; Curtis' Eq. Prec., 15, 16; Browne's Stat. Frauds, 447, 448; *Taylor* v. *Stebbert*, 2 Ves. Jr., 437; *Champion* v. *Brown*, 6 Johns. Ch., 398; *Gouverneur* v. *Lynch*, 2 Paige, 300; *Chapman* v. *Beardsley*, 31 Conn., 115, 117.

The respondent can claim no rights under Miss Bunnell. Standing in Wood's place, and representing Wood's original third only, he made a partition with her, not a purchase from her, whereby he obtained in severalty a certain part of the lot, and thus the Wood-Osborn third, (charged always with Blatchley's equity,) became *localized* there upon the very land in dispute, instead of remaining as before diffused as an undivided interest through the whole tract. If even by accident this partition has resulted in uncovering the Wood-Osborn third, and exposing it apart and alone to the free action of Blatchley's equities, without embarrassment from rights of Miss Bunnell, which formerly intervened, (but by the partition were withdrawn,) equity will seize with eagerness the opportunity thus presented of doing justice and preventing a great wrong without hurting any innocent party. *Scovil* v. *Kennedy*, 14 Conn., 349; *Annan* v. *Merritt*, 13 id., 478; *Olmstead* v. *Winsted Bank*, 32 id., 278.

But further, at the time of the partition Miss Bunnell had become bound by the petitioner's equitable claims by the ratification and adoption of the original agreement, which equity

will infer from her conduct. In 1863 Blatchley built an expensive barn inaccessible except by the passway, in reliance upon the agreement, and with the knowledge and acquiescence of Benton, Miss Bunnell's agent, who was aware that he was acting on the faith of the agreement and would suffer great loss if it were not carried into effect. During all her ownership also she has freely used the whole of the passway, and thus enjoyed the consideration of the agreement given on the part of the petitioner. She was therefore estopped from repudiating the agreement, and were the respondent a purchaser from her he would for that cause be equally estopped. *Brown* v. *Wheeler*, 17 Conn., 345 ; *Cowles* v. *Bacon*, 21 id., 451, 467.

*Ives* and *Watrous*, with whom was *Alling*, contra.

It is incumbent on the petitioner to make out a clear and strong case, for courts will not in effect repeal the provisions of the statute of frauds, except in those cases where a refusal to do so will enable one party to perpetrate a fraud upon another. *Prince* v. *Case*, 10 Conn., 375; *Foster* v. *Browning*, 4 R. Isl., 47 ; Adams' Eq., 85. But here the equities preponderate in favor of the respondent. He was vigilant and diligent, inquiring of all the parties who had knowledge, employing able counsel to investigate the title, and paying full value in perfect good faith ; while the petitioner was guilty of laches in taking no measures for years to secure a record title, by petition or otherwise, and thus leaving open a trap for an innocent purchaser. It was natural that Osborn should give more weight to the public records, and to the testimony of Wood, Benton and Goodsell, than to the simple assertion of Blatchley. Were their equities only equal the court would not interfere, and the equity is equal between persons who have been equally innocent and equally diligent. 1 Story Eq. Jur., §§ 64 *c*, 108, 389, 409 ; *Gregory* v. *Savage*, 32 Conn., 250. One who makes due inquiry and finds reason to disbelieve in the existence of an unrecorded equitable title is not chargeable with notice. *Hoyt* v. *Sheldon*, 3 Bosw., 267 ; *Massie* v. *Greenhow*, 2 Pat. & Heath, (Va.,) 255 ;

*Rogers* v. *Jones*, 8 N. Hamp., 264; *Williamson* v. *Brown*, 15 N. York, 354; *Cady* v. *Cadwell*, 5 Day, 67, 71. The rule that a purchaser with notice of prior equitable rights takes subject to those rights, is founded entirely upon the presumed fraud of the purchaser, and if under the circumstances of the case no fraud is imputable to him, his title will not be affected by prior equities. *Wheaton* v. *Dyer*, 15 Conn., 307; *Wyatt* v. *Barwell*, 19 Ves., 435; *Jolland* v. *Stainbridge*, 3 id., 478, 485; *Day* v. *Dunham*, 2 Johns. Ch., 182, 190; *Spafford* v. *Weston*, 29 Maine, 140; *Hine* v. *Dodd*, 2 Atk., 275; Adams' Eq., 158.

But were the law otherwise the respondent would still have a clear title to one undivided third part of the land in question free of incumbrance. Miss Bunnell being a *bona fide* purchaser without notice acquired a clear unincumbered title to one undivided third of the land in dispute, and the respondent by his purchase acquired all her legal rights and equitable interest in it. *Bush* v. *Golden*, 17 Conn., 594; 1 Story Eq. Jur., § 409; 2 id., § 1503 *a*; *Pierce* v. *Faunce*, 47 Maine, 507; *Lowther* v. *Carlton*, 2 Atk., 242; *Mertins* v. *Jolliffe*, Ambler, 313. The fact that Benton was Miss Bunnell's agent after her purchase does not impair her title. *Prince* v. *Case*, supra; *Coleman* v. *Barklew*, 3 Dutch., 357; *Williams* v. *Sprigg*, 6 Ohio S. R., 585; *Bracken* v. *Miller*, 4 Watts & Serg., 107. The court has no power in this proceeding to make a partition of the land in dispute. Adams' Eq., 82.

HINMAN, C. J. The bill is for the specific performance of a contract respecting a gangway or passway from the street to the rear of the petitioner's lot. It was established on the line between the petitioner's land and the land of the respondent, and partly on the land of each, at a time when the respondent's land was owned by his grantor and two others as tenants in common, by a mutual agreement between all the parties having any interest in these two lots, and this agreement, though by parol, was so far executed by the parties as to give the petitioner, as between him and the other original parties to it, a clear equitable title to its specific execution.

But the respondent, as the finding is, with full knowledge of all the facts, and with full knowledge that the petitioner claimed to own for himself and his heirs the use of the gang-way forever, purchased of one of the co-tenants his undivided third part of the lot adjoining the petitioner's lot, and as his deed made no mention of this incumbrance, and as the party of whom he purchased and both the other original co-tenants informed him that the petitioner had no such right of way over a portion of the lot, and as nothing appeared upon the town records showing any such incumbrance, he believed he could obtain by this purchase an unincumbered title. Upon this belief he chose to rely, rather than upon his full knowl-edge of the petitioner's claims and of the facts upon which those claims were founded, and accordingly made the purchase, and now claims that he is not bound by the contract of his grantor.

A bare statement of this claim is a sufficient refutation of it. Every lawyer knows that a party purchasing real estate can not hold it against a prior equitable title of which the purchaser had notice at the time of his purchase, and that a contrary principle would lead to the grossest frauds. The respondent by his purchase put himself in the condition of his vendor and is bound by every equitable incumbrance upon the property of which he had notice. The parade in refer-ence to the consultation of counsel and the examination of the town records, when he had full knowledge of the state of the title, is rather evidence of an intentional fraud than any excuse for purchasing as unincumbered property which he knew to be otherwise.

But Benton, one of the original tenants in common, and therefore one of the parties to the agreement with the peti-tioner, conveyed his interest in the common property to Cor-nelia Bunnell, previous to the respondent's purchase of his interest therein, and she together with the respondent and the other proprietor have since made a partition of it among them-selves, and in this partition the respondent's share was set to him adjoining the petitioner, so that that part of the passway which is not upon the petitioner's land is upon land now held by the respondent in severalty. And it does not appear that

Miss Bunnell had any knowledge of the petitioner's equity at the time of the purchase, or at the time of the partition between the tenants in common.

The claim of the respondent here is, that as Miss Bunnell is a *bona fide* purchaser without notice, she acquired an unincumbered title to one undivided third part of the disputed land ; and that although the respondent is chargeable with notice, he acquired by his purchase all the legal rights and equitable interests which Miss Bunnell had acquired by her purchase of one third part of the premises. How this would be if the property was still undivided between the tenants in common it is not important to inquire. Perhaps it would be the duty of the court in such a case to see that the rights of the *bona fide* purchaser were protected. But it is certain that Miss Bunnell's rights can not be affected in any way by this proceeding, as she is not a party to it. And it appears to us that the respondent ought not to be permitted to take advantage of any supposed right that she may have had, or may now have, in that part of the land covered by the passway.

By the partition between the tenants in common the passway becomes an incumbrance upon the land now held by the respondent in severalty ; and if he saw fit heedlessly to accept of less than he was justly entitled to in making the division, when he had full knowledge of Blatchley's rights, he clearly ought not to be permitted now to deprive the petitioner of his rights to the passway, because of an injury which he has brought upon himself. The petitioner must suffer a great wrong if deprived of his passway, and he is in every respect an innocent party. The respondent does not stand in this favorable light toward the petitioner, whose equitable interest he attempted to take away on the ground that it had not become vested in him by virtue of any legally recorded deed, and if his speculation instead of proving a success has operated to his pecuniary injury, it is the subject of less regret than would have been occasioned if he had succeeded in unjustly depriving the petitioner of his equitable ownership of the passway.

We advise the superior court that the petitioner is entitled to the relief asked for.

In this opinion the other judges concurred.