THE NEW YORK, NEW HAVEN AND HARTFORD RAIL-
ROAD COMPANY ET ALS. *vs.* HELEN A. RUSSELL ET AL.

* Second Judicial District, Norwich, October Term, 1910.
HALL, C. J., PRENTICE, THAYER, CASE and BURPEE, Js.

A deed of land to husband and wife makes them joint tenants without the right of survivorship.

In general, a *bona fide* purchaser may be defined to be one who purchases property without notice of the claims of third parties thereto.

What one in the exercise of ordinary care should have observed is generally to be imputed to him as known.

The knowledge of an agent respecting material and visible objects upon real estate which he is employed to purchase is the knowledge of his principal.

One who purchases land with notice of the equitable rights of third persons will be regarded by a court of equity as standing in the shoes of his grantor, and as purchasing the land subject to such equitable charge, even though upon the record the title appears to be clear and the buyer believes that no incumbrance exists.

* Transferred from first judicial district.

A power company engaged in the generation and transmission of high voltage currents of electricity for use at remote points, for a valuable consideration obtained from one *C*, who owned land jointly with his wife, written authority "to erect and perpetually operate and maintain" a double line of poles and wires upon and across such land; and caused such writings to be duly recorded. In these negotiations *C* acted not only for himself but also for his wife, and she acquiesced in all he did, and, after the line had been constructed, joined him in executing another instrument of like nature which recognized and confirmed the authority previously given. This writing was not, however, recorded. *Held* that if these facts did not show a legal grant, from both owners to the power company, of an easement in fee, they certainly did show that it was the intention of the power company to purchase, and of both owners to grant, such an easement or right, and were sufficient not only to estop *C* and his wife from disputing the authority so conferred, but to warrant a court of equity in restraining them from destroying or injuring the line constructed and maintained by the power company pursuant thereto.

About three years after the erection of this line, *C* and wife sold and conveyed the land by warranty deed to a purchaser who had no actual knowledge of the existence of the line, but whose husband, who acted for her in effecting the purchase, had several times visited the premises and was aware of the location of the poles and fixtures and supposed they were electric light and telephone lines for the use of the residents in that locality; but neither the purchaser nor her agent made any inquiry respecting the line or as to the right of any one to maintain it. *Held* that under these circumstances the vendee was put upon inquiry and chargeable with a knowledge of the facts which such inquiry would in all probability have disclosed; and therefore could not claim the protection afforded to a *bona fide* purchaser without notice, in reliance upon which she sought to remove the poles and wires from the land so purchased.

Argued October 19th—decided December 16th, 1910.

SUIT to restrain the defendants from injuring or interfering with the poles, wires and fixtures of the plaintiff's electric power transmission line, brought to the Superior Court in Litchfield County where a demurrer to two of the defenses in the answer was overruled (*Ralph Wheeler, J.*) and the cause was afterward tried to the court, *George W. Wheeler, J.;* facts found and judgment rendered for the plaintiffs, from which all

parties appealed.  *Error on plaintiffs' appeal; no error on defendants' appeal.*

The trial court found these facts: The plaintiff, The New York, New Haven and Hartford Railroad Company, is the lessee of certain electric railways and electric lighting companies.  The plaintiff Connecticut Company, as agent for said railroad company, is engaged in operating said railways and electric lighting companies.  The plaintiff, The New Milford Power Company, develops electric energy from the Housatonic River, and transmits it by lines of wire on poles through several towns of Connecticut, and furnishes the Connecticut Company a part of the electric power used by it.

The pole and transmission lines of the Power Company consist of two lines of poles with wires and fixtures attached thereto, twenty-five feet apart, and substantially parallel with each other, the poles being fifty feet apart in each line, and extending from the power-house in New Milford to the places where the electric power is utilized by the other plaintiffs.  These poles are about thirty feet high, each having near its top three large porcelain insulators, and three wire cables, each about half an inch in diameter, which carry high voltage electric currents.  Ten feet below these wires, on one line of poles, is a telephone wire for the use of the Power Company.  Neither light nor power is supplied by these lines to the inhabitants of Washington, where the defendants' land is situated.  The dams, power plant, flowage rights, and transmission lines of the Power Company, are worth upward of $750,000.  Said lines of poles and wires extend across the defendant Mrs. Russell's premises in a double line about fifteen hundred feet, through a strip of woodland about forty feet wide, from which the timber has been cut, making a gap through the woods with nothing therein

but said lines of poles. These lines are plainly visible to any person passing along the Curtis road on the south, and along the highway forming a part of the westerly boundary of said premises, which skirts the Shepaug River.

Cortland D. and Adelaide J. Cole were married in Washington in 1875, and have a child still living. They acquired title to the land in question, which consists of two parcels separated by a highway running north and south, on the 5th of April, 1882, by a duly recorded deed from one Frisbie, in which they were both grantees. Since that time and until 1904, they continued to live upon said premises.

In May, 1903, Cortland D. Cole had various conversations with agents of the Power Company relative to permitting it to cross said premises with its pole line, and a survey was made showing the location of the proposed line from the point where it enters said premises from the Curtis road to the divisional fence between the adjoining land of one Van Ingen on the west, and on June 2d, 1903, said Cortland D. Cole, in consideration of $99, executed and delivered to the Power Company the deeds, Exhibits *A* and *B*, which were duly acknowledged and recorded, and were as follows:—

### Exhibit A.

"For the sum of ninety-nine dollars paid to me by The New Milford Power Company, a corporation located at New Milford, Connecticut, I agree for myself, my heirs, representatives, and assigns, to allow said company, its successors and assigns, to erect and perpetually operate and maintain two lines of poles with wires and fittings, both of said lines to be at the points marked on map of my land in the town of Washington; to cut and keep cut all trees between and adjoining said

lines that interfere with the same, and at all times to enter upon my land for repairing or renewing said lines and keeping the same free from obstructions. Said company shall be liable for any damages to growing crops and fences caused by repairing lines.

"Witness my hand and seal this 2d day of June, 1903, at Washington, Conn.

"Witness            CORTLAND D. COLE. (L. S.)"
Edith T. Pope.
Albert W. Lum."

### Exhibit B.

"Received of The New Milford Power Company, one dollar, in consideration of which I hereby grant unto said company, its successors and assigns, the right to construct, reconstruct, operate and maintain its lines along the property which I own, or in which I have any interest in the Town of Washington, County of Litch-field, and State of Connecticut, including the necessary poles and fixtures along the roads, streets or highways adjoining the property owned by myself in said town, in full payment for such right and in full satisfaction for the cutting down or trimming of any trees along said lines necessary to prevent interference with the operating of said lines, and with the right to set the necessary guy and brace poles, and to attach to trees the necessary guy wires. No trees to be cut, the lines will go over on 35-foot poles.

"Witness my hand and seal this 2d day of June, 1903, at Washington, Conn.

"Witness            CORTLAND D. COLE. (L. S.)"
Edith T. Pope.
Albert W. Lum."

The map described in Exhibit *A* duly delineated the lines of poles from the point where they enter the Cole premises at the Curtis road to the divisional fence at

the Van Ingen property on the west. Said map was not deposited in the town clerk's office. Afterward, when it was learned that the Power Company could not acquire a right of way over the Van Ingen land, as had been intended, Cortland D. Cole orally agreed with the Power Company that it might extend its lines from said divisional fence at the Van Ingen property to the highway skirting the Shepaug River through certain woodland belonging to Mr. and Mrs. Cole; and thereupon said lines were constructed as so agreed, and as shown upon a map made during the construction of said line, which also defined the lines over the defendants' land, from the point where it crosses the Curtis road to the divisional fence of the Van Ingen property. Cortland D. Cole had knowledge of said map, but the defendants had not, and it remained in the possession of the Power Company; and on November 9th, 1903, in pursuance of said oral agreement made by Cole, the Power Company, Cortland D. Cole and his wife, Adelaide J. Cole, executed the deed, Exhibit *E*, as follows:—

### Exhibit E.

"For the sum of two hundred dollars paid to us by The New Milford Power Company, a corporation located at New Milford, Connecticut, we agree for ourselves, heirs, representatives, and assigns, to allow said company, its successors and assigns, to erect and perpetually operate and maintain two lines of poles with wires and fittings, said lines to be on our land in the Town of Washington, on a strip of land forty feet in width, commencing at the Shepaug River and extending southerly adjoining the land of E. H. Van Ingen to a stone and dowel on the line sold by us to the company on June 2, 1903, and the other to be not less than twenty-five feet nor more than thirty feet therefrom; to cut and keep cut all trees between and adjoining said

lines that interfere with the same; and at all times to enter upon our land for repairing or renewing said lines and keeping the same free from obstructions. Said company shall be liable for any damages to growing crops or fences caused by repairing lines.

"Witness our hands and seal this 9th day of November, 1903, at

" H. R. Leydon,        CORTLAND D. COLE    (L. S.),
    Witness."          ADELAIDE J. COLE    (L. S.)."

Exhibit *E* was not recorded. At the time Exhibits *A*, *B* and *E* were delivered to the Power Company, Mr. and Mrs. Cole were living upon the land upon which the line of poles and wires was constructed and knew of such construction, and its purpose, and made no objection to the construction and operation of the same. Mrs. Cole had no personal dealings with the Power Company, except in the execution of Exhibit *E*, but had full knowledge of the purchase by the company of the rights conveyed by Exhibits *A* and *B*. Her husband was her agent in all he did leading up to the execution of Exhibits *A*, *B* and *E*, and his wife knew all that he had done and acquiesced in it, and at no time did she inform the Power Company that she had any interest in the premises.

On January 30th, 1906, the defendant Walter A. Russell, acting as the agent of his wife, Helen A. Russell, the other defendant, both of whom were non-residents, procured from said Cortland D. Cole an agreement to purchase the said Cole premises, and received a map thereof, but said pole line was not shown thereon. Soon thereafter said Mrs. Russell leased said premises for the summer season of 1906. Thereafter said Walter A. Russell commissioned the treasurer of the Litchfield Savings Bank to employ a lawyer to search the title. The treasurer employed a lawyer who

reported to him orally that the premises were clear of encumbrance except a mortgage to the bank, and the treasurer so reported to Mr. Russell, and he, relying upon said information, determined to make said purchase. Thereupon said Mr. and Mrs. Cole, on February 7th, 1907, duly executed and delivered to said Helen A. Russell a deed of said two parcels, with the buildings thereon, containing the usual covenants of warranty except as to the then existing mortgage to said bank, in consideration of the payment to them of $6,500, including therein the assumption of the said mortgage, which deed was on February 13th, 1907, duly recorded in the land records of said Washington. The defendants first went to reside upon said premises in May, 1907.

The negotiations leading to such purchase were conducted by Mr. Russell, acting as the agent for his wife, and by the said Mr. Cole, acting for himself and as the agent for his wife. The defendant Walter Russell had had large experience in matters concerning the purchase and sale of real estate.

Prior to taking up her residence on said premises in May, 1907, Mrs. Russell had no actual knowledge of said Exhibits *A* and *B,* or of the existence of said lines of poles and wires upon or across said premises, although she had once driven upon a part of said premises, from which point the view of the pole line is not good, but at that time did not get out of the conveyance in which she was riding. She had also driven on the Curtis road and the highway forming the western boundary of said premises, from both of which points said lines could readily be seen.

Mr. Russell visited said premises several times prior to the execution of the deed to his wife, and saw the said two lines of poles and wires which had then been erected and were then being operated and maintained

by the plaintiff Power Company, and he then believed, as a result of what Mr. Cole had said to him, that said pole lines were electric light and telephone lines of which the residents along the line could secure the use. He had no knowledge in fact of any of the rights of said Power Company to locate, maintain, or operate a power line in that locality, or that said line was in fact employed in the transmission of high voltage electrical currents to long distances.

Said Cortland D. Cole had in his possession at the time of the execution and delivery of Exhibits *A* and *B*, and has since had down to the trial hereof, the map referred to in Exhibit *A*, which Mr. Cole never showed Mr. Russell, nor spoke of to him, and which it is more than likely he would not have shown him had Mr. Russell asked for it. Neither of the defendants made any inquiry prior to the execution and delivery of said deed to Mrs. Russell, either of the grantors, Mr. and Mrs. Cole, or of said Power Company, as to the rights of said Power Company, or of any party, to maintain said lines of poles and wires across said premises.

After the delivery of said deed, Mrs. Russell caused plans to be prepared for a dwelling-house upon said premises, and other improvements thereon, to cost upward of $25,000 to $30,000, and before either Mr. or Mrs. Russell had actual knowledge of Exhibits *A* and *B*, or of their existence, they had paid or contracted to pay upward of $5,000 on account of said house.

On or about March 15th, 1907, Mr. Russell learned of said Exhibits *A* and *B*, when engaged in an effort to notify such owners to remove said pole lines, and thereupon demanded, in behalf of Mrs. Russell, of said Cortland D. Cole, that he take back the title to said premises and reimburse Mr. and Mrs. Russell for all of the expenditures thereon, but said Cole neglected so to do. The defendants had no knowledge of Ex-

hibit *E* until the same was filed in court October 22d, 1909.

Mrs. Russell has proceeded with said improvements and has thus far expended upward of $15,000 therefor. Said premises at the time of said purchase by Mrs. Russell were of the reasonable value of $6,500. If said house is completed at a cost of $30,000, the reasonable value of said premises so improved would be upward of $35,000, with said pole line removed. The said pole lines, if continued, would greatly injure said premises, and their presence is attended with some danger. There are other available routes for said pole lines, a change to which would involve an expense of from $25,000 to $35,000.

On April 20th, 1907, the defendants, by Mr. Russell, notified the said Power Company to remove its poles and wires, and unless restrained from so doing the defendants will remove them.

*William Waldo Hyde* and *Frederic M. Williams*, for the plaintiffs.

*Stiles Judson*, for the defendants.

HALL, C. J.   Upon the facts recited in the above statement of the case, the trial court held, in effect, that Cortland D. Cole, as a joint tenant with his wife of the land in question, and as tenant by the curtesy of her interest, and acting as her agent therein, had conveyed to the plaintiff Power Company a right to construct and maintain the described pole and transmission lines over said premises during his life, and that the defendant Helen A. Russell was chargeable with notice of such conveyance, and thereupon enjoined the defendants from removing or interfering with said poles and wires during the lifetime of said

Cortland D. Cole. The plaintiffs appeal upon the ground that the injunction should have been made perpetual, and the defendants appeal upon the ground that no injunction should have been granted.

The controlling questions in the case are these: (1) What rights did the New Milford Power Company acquire from Mr. and Mrs. Cole? (2) Was the defendant Helen A. Russell such a bona fide purchaser of the land that, as against her, equity will not protect, either wholly or in part, the rights acquired by the Power Company from the Coles.

The following are matters of import in deciding the first of these questions: By the deed from Frisbie, in 1882, Mr. Cole and his wife became joint tenants of the land in question, but without the right of survivorship. *Phelps* v. *Jepson*, 1 Root, 48; *Whittlesey* v. *Fuller*, 11 Conn. 337, 340. By his marriage and the birth of his child he became tenant by the curtesy initiate of his wife's land, which is in law an estate for life. 1 Swift's Dig. s. p. 82; *Whittlesey* v. *Fuller*, 11 Conn. 337, 340; *Sill* v. *White*, 62 Conn. 430, 436, 26 Atl. 396; *Winestine* v. *Ziglatzki-Marks Co.*, 77 Conn. 404, 406, 59 Atl. 496.

The duly recorded deed of Cortland D. Cole of June 2d, 1903 (Exhibit *A*), assumed to convey, and was presumably intended to convey, to the Power Company an easement in fee. By its terms it was a conveyance by the grantor, his "heirs, representatives, and assigns," of a right to the Power Company, "its successors and assigns, to erect and perpetually operate and maintain" at least that portion of the lines of poles and wires as erected and now standing between the point of crossing the Curtis road and the point where they reach the boundary line of the Van Ingen land.

In making the conveyances, Exhibits *A* and *B*, Mr. Cole not only acted for himself, but as the authorized agent of his wife, and she "knew of all that he had done

and acquiesced in it." Both he and she knew of the construction of all of the lines and their purpose, and she neither objected to it, nor made any claim of ownership in the land.

When it was found that the Power Company could not procure a right of way over the Van Ingen land, Mrs. Cole not only agreed with the Power Company, through the agency of her husband, that it might extend its lines, as it did, from the Van Ingen divisional line to the highway skirting the Shepaug River, but she joined with her husband in the execution of Exhibit *E* authorizing such extension, and granting to the Power Company, its successors and assigns, the express right "to erect and perpetually operate and maintain" said lines as they had been constructed upon the Cole land, between the Shepaug River and the "stone and dowel" near the Van Ingen boundary; and in said conveyance described said last-named terminal point as "on the line sold by us to the company on June 2, 1903," the date of the execution of Exhibits *A* and *B*.

If these facts do not show a legal grant from both Mr. and Mrs. Cole to the Power Company of an easement in fee, or a perpetual legal right to construct and maintain said poles and wires as they have been constructed and operated over the Cole's land since 1903, they clearly show that it was the intention of Mr. and Mrs. Cole to grant, and of the Power Company to purchase, such an easement or right, and they show a right in the Power Company which the Coles would be estopped from disputing, and which a court of equity would restrain them from destroying or injuring. Washburn on Easements (4th Ed.) p. 29; *Canfield* v. *Gregory*, 66 Conn. 9, 17, 33 Atl. 536; *Donohue* v. *El Paso & Southwestern R. Co.*, 214 U. S. 499, 29 Sup. Ct. Rep. 698.

For the purposes of this case a bona fide purchaser

may be defined to be one who has purchased property without notice of the claims of third parties thereto. *Hayden* v. *Charter Oak Driving Park*, 63 Conn. 142, 147, 27 Atl. 232. The answer, therefore, to the second of the above stated questions, depends upon what notice of said claim of the Power Company the facts show Mrs. Russell received before purchasing the land, and whether, notwithstanding such notice, equity will still regard her as in any respect a bona fide purchaser.

The trial court has found that prior to May, 1907, Mrs. Russell had no actual knowledge of the deeds *A* and *B*, nor of the existence of the lines of poles and wires. She had driven along the highways from which the lines were readily to be seen. From the described character of the poles and lines and the cut made in the woods, they were as prominent objects as the tracks of a steam railroad built over this land would have been. They were such objects as would be noticed by any reasonably observant person, and especially one contemplating purchasing the property upon which they stood, and what one in the exercise of ordinary care should have observed is generally to be imputed to him as known. *Stedman* v. *O'Neil*, 82 Conn. 199, 206, 72 Atl. 923. But it is unnecessary to inquire whether Mrs. Russell ought to have seen them. Her husband, as her agent, conducted the business of purchasing the property for her, and his knowledge regarding the poles and lines was her knowledge. *Farmers & Citizens Bank* v. *Payne*, 25 Conn. 444, 449. Mr. Russell visited the premises several times prior to the purchase of them by his wife, and observed how the Power Company was occupying the land with their poles and lines, as it had done for more than three years. He saw the poles and lines, all of which were then in use, and as a reasonably prudent man, and a person of "large experience in the purchase of real estate," he must have known

that they were for the transmission of electricity, to be used for light or power, and that some one, other than the Coles, engaged in developing or transmitting currents of electricity, had some right to construct these lines, and use them upon the land he was about to purchase. As a result of what Mr. Cole told him, Mr. Russell believed that they were electric light and telephone wires. Neither of the defendants before purchasing the land made any inquiry of any person respecting these lines, or the right of any one to maintain them. Apparently the only act which can be regarded as an effort to obtain information regarding these lines of poles and wires was that of Mr. Russell in commissioning the treasurer of a savings-bank to employ a lawyer to search the records. The lawyer employed either made no search or made an insufficient one. Had the defendants seen, as they should have, the recorded instruments, Exhibits *A* and *B*, they would have learned the fact that Mr. Cole had assumed the power (and it was one which Mrs. Cole had in fact authorized him to exercise, and had acquiesced in his exercising and his exercise of which she had confirmed in writing) of granting to the Power Company a perpetual right to maintain two lines of poles and wires over a part of this property, and that the Power Company claimed to have purchased such a right. If one purchases land with notice of an equitable right in a third person, equity regards him as standing, as to such person, in the place of the grantor, and as purchasing the land subject to such equitable charge, even though upon the record the title appears to be clear and the purchaser believes that no such encumbrance exists. *Bush* v. *Golden,* 17 Conn. 594, 602; *Blatchley* v. *Osborn,* 33 id. 226, 233. One who buys land with knowledge that his grantor has agreed to convey a right of way over it to a third party, will not in equity be regarded as a bona fide purchaser, and

may be compelled to abide by such agreement; *Botsford* v. *Wallace,* 72 Conn. 195, 199, 44 Atl. 10; *Legg* v. *Horn,* 45 Conn. 409; *Parker* v. *Nightingale,* 6 Allen (Mass.) 341; and ordinarily full and adequate means of knowledge are equivalent to knowledge. *Post* v. *Clark,* 35 Conn. 339, 342.

In Pomeroy on Equity Jurisprudence (3d Ed., Vol. 2, § 597) it is said: "If, however, it appears that the party obtains knowledge or information of such facts, which are sufficient to put a prudent man upon inquiry, and which are of such a nature that the inquiry, *if prosecuted with reasonable diligence, would certainly lead to a discovery of the conflicting claim,* then the inference that he acquired the information constituting actual notice is necessary and absolute"; and again, in § 600, after asking "What facts are sufficient to put the party upon an inquiry," it is said: "Among the facts to which, as evidence, such force has been attributed are: . . . the sight or knowledge of visible material objects upon or connected with the subject-matter, which may reasonably suggest the existence of some easement or other similar right." And see *Niles* v. *Cooper* (Minn.), 13 L. R. A. N. S. 1. In *Whiting* v. *Gaylord,* 66 Conn. 337, 34 Atl. 85, this court said, in effect, that a purchaser of land had notice of an easement which was apparent to an ordinary observer. In *Alderman* v. *New Haven,* 81 Conn. 137, 70 Atl. 626, it was held that in the absence of proof of actual knowledge of the existence of an easement by successive owners of the fee, knowledge would be imputed to them where the possession and use of the land were open, visible and apparent, such as the use of the land for a trunk sewer by means of direct communication with which the land itself and the buildings thereon were drained. In *Ely* v. *Cavanaugh,* 82 Conn. 681, 685, 74 Atl. 1122, we held that one who buys land with full notice that another is in possession of

and claims personal property thereon, is thereby put upon his inquiry, and chargeable with a knowledge of the rights of such claimant. In *Kirby* v. *Tallmadge,* 160 U. S. 379, 383, 384, 16 Sup. Ct. Rep. 349, the court says that it is well settled law that "possession, under apparent claim of ownership, is notice to purchasers of whatever interest the person actually in possession has in the fee, whether such interest be legal or equitable in its nature, and of all facts which the proposed purchaser might have learned by due inquiry."

Some of the other cases brought to our attention, in which visible objects were held to be sufficient to direct the attention of a reasonably prudent person to prior rights of a third party and to put the former upon inquiry and so charge him with implied notice, are: *Hervey* v. *Smith,* 22 Beav. 299; *Davies* v. *Sear,* L. R. 7 Eq. 427; *Indiana, B. & W. Ry. Co.* v. *McBroom,* 114 Ind. 198, 15 N. E. 831; *Chicago & E. I. R. Co.* v. *Wright,* 153 Ill. 307, 38 N. E. 1062; *McDougal* v. *Lame,* 39 Ore. 212, 64 Pac. 864; *Atlantic City* v. *New Auditorium Pier Co.,* 63 N. J. Eq. 644, 53 Atl. 99.

It is our conclusion from the facts before us, that more than three years before Mrs. Russell purchased the land in question, the plaintiff The New Milford Power Company acquired the right to erect and maintain these lines of poles and wires across it at the place, and in the manner they have since been visibly and openly maintained and operated, and that equity will regard such right as a perpetual easement; that the defendant Walter Russell had actual knowledge of the existence and operation of said lines before his wife purchased the land in question, and that she is chargeable with the knowledge which her husband had acquired while acting as her agent; that said knowledge was sufficient to put them upon inquiry, and that upon reasonable inquiry they would probably have learned

the character, extent, and ownership of the right of the Power Company; that the defendant Mrs. Russell is therefore in no respect a bona fide purchaser as against the plaintiffs, and that the defendants should have been permanently restrained from removing said poles or interfering with such right of the Power Company.

The rulings upon questions of evidence were correct and need no discussion. The conclusion we have reached renders a discussion of the plaintiffs' demurrer unnecessary.

There is error upon the plaintiffs' appeal, and no error upon the defendants' appeal, and the case is remanded with directions to make the injunction perpetual against both defendants.

In this opinion the other judges concurred.