WALTER M. MYERS, JR., ADMINISTRATOR (ESTATE OF WALTER M. MYERS) *vs.* ALICE K. BURKE.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued March 5th—decided May 14th, 1935.

*Samuel A. Davis* and *George E. Beers,* for the appellant (plaintiff).

*William Hanna,* for the appellee (defendant).

HAINES, J. The original plaintiff, Walter M. Myers, died March 31st, 1934, during the trial of this action, and his son Walter M. Myers, Jr., the administrator of his estate, was substituted as plaintiff. Myers had bought five pieces of land in Danbury from Mary

Mickelajack on June 14th, 1920, and a tract of seventy-five acres from Charles B. and Evelyn E. Hatch on April 5th, 1924, both deeds being made to "Walter M. Myers." He personally paid the entire purchase price of both properties, giving as a part thereof, a purchase money mortgage on the Hatch tract for $1500 and assuming a mortgage on the Mickelajack lands held by the Savings Bank of Danbury, for $1400. This action presents the question of the present ownership of two of the five Mickelajack tracts containing four and nine acres respectively, and to the Hatch tract.

Myers was for twenty years a foreman in a hat factory, being employed from early morning until late afternoon each working day. He lived on other property which he owned and was unable to give much personal attention to these properties in question. In the spring of 1930, the Savings Bank of Danbury began foreclosure proceedings on the Mickelajack properties and the papers were served upon Walter M. Myers, who handed them to his son, Walter M. Myers, Jr., and told him to attend to the matter. The latter took the writ to the attorney for the bank, with whom he discussed the possible sale of a part of the property in order to raise necessary funds to pay the bank's mortgage. At this point certain facts from the draft-finding which we deem relevant and justified by the evidence, are incorporated in the finding of facts. Both father and son consulted a bank man of their acquaintance and upon his advice decided to sell a thirty-two-acre tract (being one of the five Mickelajack properties) to Joseph A. Keating, for $6,000, and so informed the attorney for the foreclosing bank. Myers understood that his son was to pay the purchase money mortgage and the cost of certain buildings hereinafter referred to, from the proceeds of this sale

and he told his son to bring him any papers necessary to consummate the sale and he would sign them. Both father and son were inexperienced in such matters and it is apparent that they left the details of the transaction to those with whom they were dealing. The attorney for the bank first prepared an option and later a deed of the property to Joseph A. Keating, but instead of taking the papers to his father, the son signed them, Walter M. Myers, Jr., in the belief that he had a right to do so. Subsequently the attorney for the bank was informed by Anna, the wife of Myers, Jr., that the father was the owner of the property, and the attorney thereupon procured from the latter a quitclaim deed confirming the title to this thirty-two-acre tract in Keating. Both father and son, after the signing of this deed, erroneously assumed and believed that all the Mickelajack properties were transferred to Myers, Jr., and the father thereafter paid no further attention to these lands. Two days thereafter Myers, Jr., in that belief, transferred the remainder of the Mickelajack lands, including the four acre and nine acre tracts in question, to his wife, Anna. Anna thereafter conveyed certain portions of the property, not including the two tracts in question, to various other parties. Thus, though the father still in fact continued to hold the legal title of record, the ostensible title passed to Anna and to her grantees.

Upon the third tract in question, known as the Hatch tract, acquired by Walter M. Myers in 1924, Myers, Jr., with the consent of his father, built a small house and a large barn costing, with equipment, about $6000. Some lumber and materials therefor were bought by Myers, Jr., personally, from Taylor & Son, New Milford. The father knew that Taylor & Son were to furnish material for the barn but took no

active part or interest and did not participate in this enterprise, believing that the payment therefor would be made out of the money received for the thirty-two-acre piece sold to Keating. It also appears that this Hatch tract was included in several mortgages thereafter given by Myers, Jr., and Anna Myers.

Taylor & Son brought suit against Myers, Jr., to recover for these materials and obtained judgment against him and filed a judgment lien, including therein the three tracts in question. This lien was later foreclosed against Myers, Jr., and the time limited for the redemption having expired, Harry H. and Kenneth F. Taylor claimed the absolute title to these tracts and proceeded to eject Myers, Jr., therefrom. The trial court found that the father knew of the sales of the various tracts by his son Myers, Jr., and Anna Myers, and knew all the acts of ownership exercised by them over these tracts, but this finding is attacked by the plaintiff as without support in the evidence. Myer's testimony, supported by Myers, Jr., and Anna, was that he did not learn of the mortgage they had given until July, 1933, being the month this action was brought. It does appear that he learned of some of the transfers of property by Myers, Jr., and Anna, after they were made, and to prevent loss to the grantees he signed confirmatory deeds. He specifically denied knowledge that Taylor & Son were dealing with Myers, Jr., as the owner of the property, or that he knew of the lien foreclosure and ejectment, and in this he is supported by Myers, Jr., and Anna Myers. Myers, Jr., testified without contradiction that he asked the sheriff not to tell his father of the ejectment proceedings, but the sheriff came to him at the factory where both father and son were employed and while talking to him his father came up and asked the sheriff what it was all about, and thus learned for the first

time of the Taylor claim and suits. We are unable
to find by any direct evidence or reasonable inference,
that Walter M. Myers knew of these acts of owner-
ship by his son until after they had taken place and
the finding in question cannot be supported.

Having by the foreclosure of their lien obtained the
ostensible legal title to the properties on March 12th,
1932, Taylor & Son agreed to sell these tracts to the
defendant through her agent Keating, who had previ-
ously bought the thirty-two-acre tract, but before the
transfer had been made Myers, Sr., called the atten-
tion of Taylor & Son to the fact that he, Walter M.
Myers, was the owner of the property, and he offered
to pay them the amount of their claim against Myers,
Jr., requesting that an itemized bill be sent him so
that he could pay it. They did not send the bill or
accept the offer, but thereafter deeded the property
by direction of Keating, to the defendant, who is his
sister and a nonresident, for the expressed considera-
tion of $6100, and she now claims to be the owner of
the property. She rests this claim primarily upon the
contention that Walter M. Myers is estopped to deny
her title. It is not and of course cannot be claimed
that she acquired a good title from Taylor & Son. By
their foreclosure against Myers, Jr., they had not in
any way divested Walter M. Myers of his record title.

To successfully claim an estoppel against him, the
defendant was required to establish at least three
things: (a) some conduct or statement of Myers, Sr.,
known to her, inconsistent with his present claim of
title, (b) her reliance in good faith upon such conduct
or statement, and (c) a resulting injury to her. 21
C. J. p. 1119, § 122. The right to claim an estoppel
is an individual right, and it is wholly unimportant
whether any conduct or statement of Walter M. Myers
created an estoppel against him in favor of other

parties. It was necessary for the defendant to show that this conduct or statement related to these tracts and that she relied in good faith upon them to her injury. *Morris* v. *Brown,* 115 Conn. 389, 393, 162 Atl. 1; *United States Wood Preserving Co.* v. *Lawrence,* 89 Conn. 633, 643, 95 Atl. 8; *Porter* v. *Orient Ins. Co.,* 72 Conn. 519, 530, 45 Atl. 7; *Basak* v. *Damutz,* 105 Conn. 378, 383, 135 Atl. 453.

The amended finding establishes certain relevant facts as to the knowledge or means of knowledge of this defendant's agent regarding this title. It is beyond dispute that at all times after Walter M. Myers purchased these tracts, the record legal title continued to stand on the land records in his name—Walter M. Myers. It was not a justifiable assumption on the part of the defendant's agent, that Walter M. Myers, Jr., was the person referred to in the land records, and a mere mistaken belief that this was so cannot be held to be the fault of Walter M. Myers. As far back as the time of the sale of the thirty-two-acre tract, it appears from the finding that Attorney Sherwood, who had drawn the option and deed which Keating had taken for that tract from Myers, Jr., was notified by Anna Myers that Myers, Sr., was the owner, and he then obtained a confirmatory deed from Myers, Sr., to perfect the title in Keating. It is an inescapable inference, therefore, that Keating, the defendant's agent, learned definitely what he should have known from the land records, that Myers, Jr., was not "Walter M. Myers," the record owner of these properties. It does not militate against this conclusion that it appears from the finding that Walter M. Myers stated at the time he gave that confirmatory deed to Keating that he had no interest in the thirty-two-acre tract, since it is clear from the finding as amended that he was

under the mistaken impression that he had already conveyed the tract to his son.

"If . . . it appears that the party obtains knowledge or information of such facts, which are sufficient to put a prudent man upon inquiry, and which are of such a nature that the inquiry, if prosecuted with reasonable diligence, would certainly lead to a discovery of the conflicting claims, then the inference that he acquired the information constituting actual notice is necessary and absolute." 2 Pomeroy, Equity Jurisprudence (4th Ed.) pp. 1119, 1120, § 597. " 'Knowledge on the part of a purchaser of goods from another of facts and circumstances which ought reasonably to excite suspicion and put one on inquiry is sufficient to charge him with notice of facts that he might have ascertained by the exercise of ordinary diligence. Whatever is sufficient to put a man on inquiry amounts to notice; that is, where one has sufficient information to lead him to the knowledge of a fact he should be deemed to be cognizant of such fact.' " *Bay State Milling Co.* v. *Susman, Feuer Co.*, 91 Conn. 482, 490, 100 Atl. 19. "Full and adequate means of knowledge ordinarily are in law equivalent to knowledge." *Colvin* v. *Delaney*, 101 Conn. 73, 77, 78, 124 Atl. 841; *Post* v. *Clark*, 35 Conn. 339, 342; *Lengyel* v. *Peregrin*, 104 Conn. 285, 288, 132 Atl. 459; *Kulmacz* v. *Milas*, 108 Conn. 538, 543, 144 Atl. 32; *Stueck* v. *Murphy Co.*, 107 Conn. 656, 669, 142 Atl. 301. If one buys land with notice of the rights of a third person therein, even though the record title appears to be clear, and the purchaser believes that no such incumbrance exists, he may nevertheless be subject to such right. *New York, N. H. & H. R. Co.* v. *Russell*, 83 Conn. 581, 594, 78 Atl. 324; *Blatchley* v. *Osborn*, 33 Conn. 226, 233. The knowledge of the defendant's agent was her knowledge. *New York, N. H. & H. R. Co.* v. *Russell*,

supra, 593; *Farmers' & Citizens' Bank* v.. *Payne,* 25 Conn. 444, 449.

The established facts present a picture of inexperience in handling real estate, ignorance of real-estate law, and carelessness in general, but without any apparent intent to mislead on the part of both Myers, Sr., and Myers, Jr. On the other hand, those with whom they were dealing were obviously men of experience in real-estate matters. They were charged with notice that the title to these tracts stood on the land records in the name of Walter M. Myers and not Walter M. Myers, Jr. *Stueck* v. *Murphy Co.,* supra, p. 669. They knew both Walter M. Myers and Walter M. Myers, Jr. The fact that the former had never been divested of his title to these three tracts of land was one which could have been readily verified by them before the deed to the defendant was given. "It is a fundamental rule in the law of estoppel by conduct, that the person claiming an estoppel 'must show that he exercised due diligence to know the truth, . . . and that he was destitute not only of knowledge of the true state of things, but also of any convenient or available means of acquiring such knowledge.' " *Graham* v. *Southington Bank & Trust Co.,* 99 Conn. 494, 509, 121 Atl. 812; citing *Weidemann* v. *Springfield Breweries Co.,* 78 Conn. 660, 664, 63 Atl. 162; *Williams* v. *Wadsworth,* 51 Conn. 277; Bigelow, Estoppel (6th Ed.) p. 681.

It thus appears that both the defendant's grantor and her agent being charged with such notice of the situation regarding the title to these three pieces of property, they and not Walter M. Myers, are responsible for the defendant's present position. She has not established the requisite facts for the successful interposition of the principle of estoppel against Walter M. Myers.

There is error; the judgment is set aside and the cause remanded to the Superior Court for the entry of a judgment in accordance with this opinion.

In this opinion the other judges concurred.