## MARY KULMACZ *vs.* GEORGE J. MILAS.

Third Judicial District, Bridgeport, October Term, 1928.
WHEELER, C. J., MALTBIE, HAINES, BANKS and ELLS, Js.

Argued October 30th—decided December 18th, 1928.

*Cornelius J. Danaher,* for the appellant (defendant).

*George E. Beers,* with whom was *Irving G. Smith,* for the appellee (plaintiff).

MALTBIE, J.   On August 30th, 1922, one Kiniry owned a certain piece of land in Meriden, with a street frontage of about ninety-seven feet.   On that day he conveyed the land to the defendant and one Kania by a warranty deed which described it by metes and bounds, gave the frontage as "ninety-seven feet, two and one-half inches, more or less," and then added: "or, however otherwise bounded and described as of records may appear.   An equal frontage division of this property after survey."   The defendant and Kania on the same day orally agreed to divide the property between them in accordance with a certain map, and made mutual deeds of quitclaim each to the other. Each of these deeds described a portion of the lot by metes and bounds, gave the frontage of the land included in it as "48 feet, 7¼ inches, more or less," and added: "Or however otherwise bounded and described as of records may appear."   These deeds were recorded September 16th, 1922, and the map was filed in the land records on September 18th, 1922.   This map showed the mutual boundary between these two lots as running, not in a straight line, but with an angle at a point about midway in it and delineated a "mutual driveway" ten feet wide, five feet on each side of the common boundary, from the front to the rear of the lot.   The defendant and Kania placed stakes on the land which marked the boundary of the driveway.   By

a series of mesne conveyances title to Kania's lot came to the plaintiff. At the time she acquired it, the stakes were visible to her, and the defendant informed her concerning the boundary between the lots and the existence of the map on file. The defendant claims rights in the ten-foot strip designated on the map as a "mutual driveway," and has pulled up stakes placed therein by the plaintiff. The trial court adjudged that the line dividing the lots of the plaintiff and the defendant was a straight line, and that the defendant had no rights in the plaintiff's land, and gave judgment for the plaintiff to recover nominal damages.

The first question which confronts us is, under the facts recited, did the defendant have a right to maintain the mutual driveway delineated upon the map as against Kania? Unless the statute of frauds prevents, the defendant clearly did have that right. The map bears this legend, "Map showing division of property between George J. Milas and John Kania, North George Street, Meriden, Conn." This legend is to be read in connection with the statement at the end of the description in the deed from Kiniry to the defendant and Kania, "an equal frontage division of this property after survey." If the map can be construed as incorporated in the deed from Kania to the defendant there is a sufficient memorandum to comply with the statute of frauds, signed by Kania. As between them, there can be no question that the expression used in their mutual deeds, "or however otherwise bounded and described as of records may appear," was intended to incorporate in it the rights expressed in the map. Drawn as those deeds were, immediately after the agreement between the defendant and Kania as to the boundary and the mutual driveway, and after the making of the map, it is inconceivable that the parties would have omitted all reference to that agreement;

and while the map was not on record when the deeds were made, or even when they were filed for record, it was filed almost at the same time as they were and the documents were obviously intended to constitute one transaction. They must be read together and the effect is to incorporate into the deed, as between the defendant and Kania, the rights defined on the map. *Barri* v. *Schwarz Bros. Co.*, 93 Conn. 501, 508, 107 Atl. 3.

The next question is, did the plaintiff have such notice of the boundary and right of way as delineated upon the map so that she is bound to recognize them? Section 319 of the General Statutes authorizes the filing in the office of the town clerk of maps, certified by the surveyor making them as being substantially correct, and provides that such maps shall "be deemed part of the deeds referring thereto"; and §320 provides that town clerks shall keep a special index book in which they shall enter such maps, giving their title, date, the name of the surveyor, and a brief description of the plot surveyed. The map in question was filed in the town clerk's office in accordance with these sections of the statutes and we assume that it was properly entered in the special index of maps. That would not, however, be sufficient of itself to charge the plaintiff with notice of its contents. For so holding there are several reasons: In the first place, no description possible to such an index would, in many instances, suffice to apprise one who was searching the title to a particular tract and whose attention was not in some way directed to it, whether or not it was likely to be included in a map on file; again, the express provision in the statute that such a map shall "be deemed part of the deeds referring thereto," indicates clearly a legislative intent that it would not be notice of its contents except where the terms of recorded deeds

pointed the way to it; and, finally, one searching title to land is not bound to search the records at large, but only is bound with such facts as appear in the chain of title to the particular lot in question. *Wheeler* v. *Young*, 76 Conn. 44, 51, 55 Atl. 670; 2 Pomeroy's Equity Jurisprudence (4th Ed.) §658. While under the circumstances in evidence we have held that the language in the deeds between the defendant and Kania, "or otherwise bounded and described as of records may appear," gave a sufficient expression of an intent on their part to incorporate the rights defined in the map into those deeds, we cannot hold that such an expression would point a searcher of title not acquainted with such circumstances to the map. In *LeWitt* v. *Park Ecclesiastical Society*, 103 Conn. 285, 130 Atl. 387, we recently had before us a similar phrase used in the description of a tract of land under contract of sale where the question was as to the inclusion in the contract of a portion of the tract covered by a right of way appearing of record, and we pointed out that such a phrase ordinarily is not intended to affect the extent of or interest in the land to be conveyed but only to supply deficiencies in the description as regards the ownership of adjoining tracts. Such a phrase falls far short of constituting a reference to a map on file and is not calculated of itself to cause a searcher to turn aside from following back the chain of title to examine the special index of maps, to see, if, perchance, there may be one there which bears upon that title. If the matter rested upon the effect of the land records alone, the plaintiff could not be charged with knowledge of the contents of the map.

It is found, however, that, in pursuance of the agreement between them, the defendant and Kania placed stakes in the ground marking the boundary of the ten-foot driveway, and these stakes were visible to the

plaintiff, and that before she purchased the property she "was informed by the defendant concerning the . . . boundary, and the existence of the map." If the plaintiff saw these stakes, as it must be assumed she did, it must have been apparent to her that the boundary between her lot and that of the defendant did not run in a straight line from front to rear; and if the defendant "informed" her concerning the boundary, this is one of the things which he must certainly have called to her attention. With this matter before her, and the knowledge which she had of the existence of the map on file, there is no room for reasonable disagreement that she was in duty bound to consult it, to determine her rights in the premises. Had she done so, she would indubitably have learned of the defendant's easement over so much of her land as was covered by the mutual driveway thereon delineated, and she therefore took title subject to his rights therein. *Stueck* v. *Murphy Co.*, 107 Conn. 656, 659, 142 Atl. 310; *Lengyel* v. *Peregrin*, 104 Conn. 285, 288, 132 Atl. 459; *New York, N. H. & H. R. Co.* v. *Russell*, 83 Conn. 581, 594, 78 Atl. 324. It necessarily follows that the defendant has the right as against the plaintiff to the maintenance of the mutual driveway as delineated upon the map.

There is error, the judgment is set aside, and the cause remanded with direction to enter judgment for the defendant.

In this opinion the other judges concurred, except ELLS, J., who dissented.