# PAUL D. POWERS *v.* EDWARD OLSON, JR.
## (SC 16043)

Borden, Norcott, Katz, Sullivan and Peters, Js.

Argued September 28, 1999—officially released January 11, 2000

*Michael D. O'Connell,* with whom, on the brief, was *Julia B. Morris,* for the appellant (plaintiff).

*Jon C. Leary,* for the appellee (defendant).

*Opinion*

NORCOTT, J. The dispositive issue in this appeal is whether the trial court improperly determined that the plaintiff had actual and constructive notice of the slope rights affecting his property. We conclude that the trial court improperly determined that the plaintiff, Paul D. Powers, had such notice of the slope rights affecting the property in question. We further conclude that by granting permission to the defendant, Edward Olson, Jr., to enter the plaintiff's property for purposes of exercising slope rights, the trial court improperly adjudicated rights that rightfully can be exercised only by the town of Rocky Hill (town), which was not a party to this action, and has not at any time asserted any claims against either the plaintiff or the defendant. In so doing, we conclude that the trial court improperly cloaked the defendant with rights that could belong only to the town, which have not been properly raised in the present case. We also conclude that the trial court properly found that the defendant did not possess any reservation of slope rights to the plaintiff's property and that the defendant properly was found to be responsible for damage to the plaintiff's trees and property. We further conclude that the trial court improperly granted the defendant permission to enter the plaintiff's property in order further to comply with the subdivision plan. Accordingly, we reverse the judgment of the trial court in part and affirm the judgment of the trial court in part.

The plaintiff brought this action against the defendant, the owner and developer of Burtonwood Estates

in the town. The plaintiff sought to enjoin the defendant from further excavating the plaintiff's property and to require the defendant to provide lateral support for the trees damaged by his earlier excavation of the property.[1] The trial court, *Hon. Jerry Wagner*, judge trial referee, determined that the defendant had the right to enter the plaintiff's property for the purpose of fulfilling the defendant's obligations under the property's subdivision plan, but that the defendant was required to provide lateral support for the trees on the plaintiff's property that were damaged as a result of the ensuing excavation. Accordingly, the trial court determined that the defendant had not retained slope rights to the property, but granted the defendant permission to enter the property to satisfy his obligations to the town. Furthermore, the trial court also determined that the plaintiff had suffered irreparable harm as a result of the defendant's actions and granted the plaintiff limited injunctive relief to remedy that harm.[2]

---

[1] The trial court rejected the plaintiff's claim for attorney's fees and punitive damages under the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq., and those issues are not before this court on appeal.

[2] The trial court's order provides in relevant part: "The uncontradicted testimony of [the] defendant at trial was that he reluctantly removed the slope right reservation from the deeds of conveyance at [the] plaintiff's insistence because he could not afford to lose or postpone the sale of the premises to [the] plaintiff. The reservation of slope rights by the defendant would have protected him against any claim of damage to the trees or land of the plaintiff provided [the] defendant performed his excavations in a reasonably prudent manner. Intentional withdrawal of such reservation by omitting it from the deeds or other closing documents does not affect the right of the town or owners of lots on the subdivision with respect to the provisions set forth on the map. However, [the] defendant's excavation following such withdrawal is a breach of an implied or quasi-contract between the plaintiff and [the] defendant and subjects the defendant to liability for damages sustained by [the] plaintiff to his trees or property. . . .

"[The] [d]efendant should be compelled at his own cost to erect a sufficiently high barrier, with sufficient backfill of soil, to adequately support the trees on [the] plaintiff's land. Since a town road is involved, with a sewer basin already installed and future sidewalks envisioned, any remedy ordered by this court must be acceptable to the town. However, there is no reason to prevent the defendant or his agents from completing the relocation of

The plaintiff appealed from the judgment of the trial court to the Appellate Court and we transferred the appeal to this court pursuant to Practice Book § 65-1 and General Statutes § 51-199 (c).

On appeal, the plaintiff claims that the trial court improperly imposed slope rights on his property despite its specific finding that the defendant had reserved no slope rights in the property. The plaintiff further claims that the trial court, by granting permission to the defendant to enter the plaintiff's property and to regrade the area adjacent to Cobey Road, which runs along the westerly side of the his property, effectively adjudicated rights of the town, which, as noted previously, was not a party to this action and had not asserted any such claims against the defendant or the plaintiff. Furthermore, the plaintiff claims that the trial court's issuance of a mandatory injunction compelling the defendant to erect a barrier sufficient to protect the trees on the plaintiff's property is inconsistent with the trial court's determination that the defendant had the right to enter the plaintiff's property to comply with other require-

Cobey Road or complying with all the other subdivision requirements including sewer basin or sidewalk installation providing such work is done with timely notice and reasonable care.

"The harm to [the] plaintiff's trees is irreparable and limited injunctive relief is appropriate because the harm is actual and imminent. [R. Powell, Real Property (1997) § 702(3)]. Any mandatory injunction must be issued with caution, but one was issued in a slope rights case by Judge Nadeau in *Franc* v. *Bethel Holding Co.*, Superior Court, judicial district of Danbury, [Docket No. CV880295669 (February 23, 1996)].

"[The] [d]efendant is ordered to provide at his cost an adequate lateral support to the two trees on [the] plaintiff's land by means of a sufficiently high barrier made from concrete or other suitable materials and then backfilling the area behind the barrier to a reasonable depth in order to cover the tree roots all as may be approved by appropriate town of Rocky Hill authorities. [The] [d]efendant is permitted to enter temporarily and from time to time, with ten (10) days written notice to the plaintiff, so much of the westerly portion of lot no. 7 as may be necessary to carry out this order to comply with other requirements of the recorded subdivision plan." (Citations omitted.)

ments of the recorded subdivision plan. We agree with the plaintiff and, therefore, we reverse in part the judgment of the trial court.

The following material facts are not disputed. On October 10, 1990, the plaintiff entered into a written sales agreement with Mark Olson, the defendant's son, to purchase lot no. 7 in the Burtonwood Estates subdivision. The sales agreement contained the following language: "SLOPE RIGHTS. Seller reserves the right to grade and slope said premises and relocate property line in connection with the reconstruction and relocation of Cobey Road, provided, however, said Lot #7 shall conform to the zoning regulations of the Town of Rocky Hill." Prior to the closing, the defendant, who was acting as his son's attorney for this transaction, forwarded a draft deed to the plaintiff's attorney. The draft deed included the reservation of slope rights. At that time, however, the plaintiff objected to the reservation of slope rights. The parties then agreed that neither the defendant nor his son would reserve any slope rights in the plaintiff's property.

At trial, the defendant testified that he specifically had authorized the removal of the reservation of slope rights from the deeds when lot no. 7 was conveyed to the plaintiff.[3] Accordingly, the warranty deeds conveying title of the lot and the newly constructed house on the lot to the plaintiff contained no reservation of slope rights. Each deed described lot no. 7 by appropriate bounding distances and specifically incorporated by reference a map or plan entitled: " 'Subdivision Plan: Burtonwood Estates Property of Jean W. Olson, Cobey Road & New Britain Avenue, Rocky Hill, Connecticut . . . Scale 1"=40' Date August, 1988 . . . Drawing No. 1 Revision No. 1 10-26 Staff Comments J.R. No. 2 01-

---

[3] There were originally two separate deeds of conveyance: one from the defendant to Mark Olson; and one from Mark Olson to the plaintiff.

06-89 Lots 5, 7, 8, No. 3 04-18-89 San. Esmt Data, House #s' . . . ." Each deed also contained the following language: "Said premises are conveyed subject to any ordinance, municipal regulations, public or private law . . . and to a sewer easement to The Metropolitan District as shown on said map."

At trial, the subdivision plan of Burtonwood Estates was admitted as a full exhibit. The plan consisted of six pages, approved by the town and recorded in the land records on pages 1900A through 1900F, on July 10, 1989. Because only the first page of this exhibit was labeled "Subdivision Plan," only that page corresponded to the designation cited in the warranty deeds. The other pages of the exhibit reflected drawing numbers and dates other than those specifically referred to in the warranty deeds.

Pursuant to the map, lot no. 7 is bounded westerly by Cobey Road for a distance of 169.12 feet. The plan indicates the presence of a grove of trees, including the two large sugar maple trees that are the subject of the present case, located in the northwest corner of the lot, situated on a sharply sloping bluff above the present road level of Cobey Road. At the time of the closing, the road had not been relocated, and the sidewalks had not been installed.

In April, 1996, a contractor hired by the defendant excavated portions of Cobey Road near the northwest corner of the plaintiff's lot. The plaintiff claimed that the defendant had trespassed on his property and, accordingly, had no right to excavate the property. The defendant claimed, to the contrary, that the excavation was a reasonable exercise of his responsibility as a developer to the town, and that pursuant to General

Statutes § 7-31, he had the right to enter the plaintiff's property for purposes of sloping the property line.[4]

The trial court concluded that the plaintiff had actual and constructive notice of reserved slope rights by reason of the aforementioned subdivision plan, despite the fact that no such reservation appeared in the deeds. Nonetheless, the court also concluded that the harm to the plaintiff's trees was "irreparable and limited injunctive relief is appropriate because the harm is actual and imminent."

In this appeal, we address the following substantive issues: (1) Did the plaintiff have actual notice of a reservation of slope rights because of the terms of the contract of sale?; (2) Did the plaintiff have constructive notice of such a reservation because of the deeds' reference to a subdivision plan?; and (3) Did the plaintiff have constructive notice of such a reservation because the recorded subdivision plan included the town's requirements for road construction and property development?

As a threshold matter, we set forth the standard by which we review the trial court's rulings. "An appellate court's review of a trial court decision is circumscribed by the appropriate standard of review. As we have often stated: The scope of our appellate review depends upon the proper characterization of the rulings made by the trial court. To the extent that the trial court has made

---

[4] General Statutes § 7-31 provides in relevant part: "When any person having an interest in land has caused it to be surveyed and plotted or laid out into lots and projected highways, and a map made, which map shall bear the seal of the surveyor and a certification that it is substantially correct to the degree of accuracy shown thereon, and when such projected highways have been approved by the municipal authorities empowered to approve the layout of highways, the map may be received and placed on file in the office of the clerk of the town in which such land is situated and shall thereupon be deemed a part of the deeds referring thereto, and may be produced in court accordingly . . . ."

findings of fact, our review is limited to deciding whether such findings were clearly erroneous. When, however, the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record. . . . *SLI International Corp.* v. *Crystal*, 236 Conn. 156, 163, 671 A.2d 813 (1996)." (Internal quotation marks omitted.) *Torres* v. *Waterbury*, 249 Conn. 110, 118–19, 733 A.2d 817 (1999). "It is well established that [i]n a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony. *Kimberly-Clark Corporation* v. *Dubno*, 204 Conn. 137, 153, 527 A.2d 679 (1987). The credibility and the weight of expert testimony is judged by the same standard, and the trial court is privileged to adopt whatever testimony he reasonably believes to be credible. . . . *Transportation Plaza Associates* v. *Powers*, 203 Conn. 364, 378, 525 A.2d 68 (1987). On appeal, we do not retry the facts or pass on the credibility of witnesses. *Nor'easter Group, Inc.* v. *Colossale Concrete, Inc.*, 207 Conn. 468, 473, 542 A.2d 692 (1988). . . . *Newbury Commons Ltd. Partnership* v. *Stamford,* [226 Conn. 92, 99, 626 A.2d 1292 (1993)]." (Internal quotation marks omitted.) *Torres* v. *Waterbury,* supra, 123.

With these basic principles in mind, we consider each of the claims appropriately before us on appeal. We conclude that the trial court's rulings that the plaintiff had actual and constructive notice of the reservation of slope rights, and that the defendant was liable for the damage to the plaintiff's trees, are legally and logically inconsistent with the facts. We conclude that the plaintiff did not have actual or constructive notice of the reservation of slope rights, and that the trial court improperly cloaked the defendant with rights belonging to the town, an entity that was not a party to this action.

I

## ACTUAL NOTICE

In concluding that the trial court improperly determined that the plaintiff had actual and constructive notice of the slope rights affecting his lot, we first note that the conveyance instruments did not expressly contain any reservation of slope rights. Indeed, the removal of the reservation of slope rights from the deeds was a specific requirement for the plaintiff's agreement to buy the lot.

It is a well established principle that "[a]n instrument conveying an interest in land conveys only that which is specifically expressed in the document." *Alemany* v. *Commissioner of Transportation*, 215 Conn. 437, 442, 576 A.2d 503 (1990); *Connecticut Light & Power Co.* v. *Holson Co.*, 185 Conn. 436, 441, 440 A.2d 935 (1981). Furthermore, although the sales contract contained a reservation of slope rights, it is axiomatic that a deed supersedes the underlying contract. See *Mongillo* v. *Commissioner of Transportation*, 214 Conn. 225, 231, 571 A.2d 112 (1990) ("under the principle of merger by deed, the terms of the deed would automatically replace and supersede the terms of the underlying contract, absent a reservation of collateral rights"); *Knight* v. *Breckheimer*, 3 Conn. App. 487, 490, 489 A.2d 1066 (1985) ("the general rule is that acceptance of a deed in pursuance of articles of agreement for the conveyance of land is prima facie the completion of the contract; and all stipulations contained therein . . . are merged in the deed although omitted therefrom" [internal quotation marks omitted]).

In the present case, the defendant testified and the trial court determined that he specifically had authorized the removal of the reservation of slope rights from the deeds. The defendant further testified, however, that although he had explicitly so agreed, he privately

assumed that he still would have the right to slope the property pursuant to § 7-31. It is undisputed that the defendant did not reveal this assumption to the plaintiff at any point during the course of the transaction. On this record, there is no basis to support the trial court's finding that the plaintiff had actual notice of a reservation of slope rights.

## II

### CONSTRUCTIVE NOTICE FROM DEED REFERENCE TO SUBDIVISION MAP

The defendant also argues that, because the subdivision plan of Burtonwood Estates, as recorded with the town, consists of six pages of maps, the plaintiff had constructive notice of the slope rights reserved pursuant to all of these maps. The plaintiff argues, however, that the deed executed by the defendant and accepted by the plaintiff, specifically incorporated by reference only one of the maps contained in the subdivision plan, namely, the map that relocates the route of Cobey Road, thereby eliminating the proposed road's encroachment upon his property. In fact, the defendant himself testified at trial that the map revealed only that the road did not encroach upon the plaintiff's property. The plaintiff maintains that he had constructive notice only of the information contained on the first page of the subdivision plan. We agree with the plaintiff.

Both the plaintiff and the defendant rely upon *Kulmacz* v. *Milas*, 108 Conn. 538, 144 A. 32 (1928), to support their respective arguments. In *Kulmacz* v. *Milas*, supra, 541–42, this court held that a purchaser has constructive notice only of a map specifically referenced in a deed, not of a map merely recorded and filed in the office of the town clerk. "The map in question was filed in the town clerk's office . . . and we assume that it was properly entered in the special index of maps. That would not, however, be sufficient of itself

to charge the plaintiff with notice of its contents." Id., 541. We concluded that "the express provision in the statute that such a map shall 'be deemed part of the deeds referring thereto,' indicates clearly a legislative intent that it would not be notice of its contents except where the terms of recorded deeds pointed the way to it . . . ." Id., 541–42.[5] Further, we determined that "one searching title to land is not bound to search the records at large, but only is bound with such facts as appear in the chain of title to the particular lot in question." Id., 542. In accordance with this precedent, we conclude that, in the present case, because the only map referenced in the deeds refers to the first page of the subdivision plan, the plaintiff was on notice only as to the provisions contained therein: conspicuously absent was the notice of any reservation of slope rights by the defendant. See *Hawley* v. *McCabe*, 117 Conn. 558, 563, 169 A. 192 (1933) ("[The] [p]laintiff contends that it is the duty of one searching a title to go beyond the records in the chain of title, and by historical research acquaint himself with the situation at the time each deed was made. This is too broad a statement of the duty of the title searcher.").

Additionally, it is a well established principle that "[i]n construing a deed, a court must consider the language and terms of the instrument as a whole. . . . Our basic rule of construction is that recognition will be given to the expressed intention of the parties to a deed or other conveyance, and that it shall, if possible, be so construed as to effectuate the intent of the parties." (Citations omitted; internal quotation marks omitted.) *Hare* v. *McClellan*, 234 Conn. 581, 593, 662 A.2d 1242 (1995). In the present case, the parties expressly

---

[5] The statute in question in *Kulmacz* was General Statutes (1918 Rev.) § 319, which was repealed by Public Acts 1951, No. 7, § 2, and replaced with similar language that eventually became § 7-31. The language, "shall thereupon be deemed a part of the deeds referring thereto," has not changed.

removed the reservation of slope rights from the deeds. Indeed, the plaintiff testified that he would not have closed on the agreement with the reservation of slope rights intact, and the defendant testified that he removed the slope rights specifically in accordance with the plaintiff's wishes. The intent of the parties, therefore, is consistent with our precedent in *Kulmacz*. We will not look beyond the intent manifested by the parties and, specifically, the intent so represented by virtue of the map chosen to be referred to in the deeds, in order to determine what the instrument of conveyance truly conveys.

## III

### CONSTRUCTIVE NOTICE FROM RECORDED SUBDIVISION PLAN

The defendant also argues that the entire subdivision plan, as recorded with the town, provided the plaintiff with constructive notice of the subdivision requirements set forth by the town. Accordingly, the defendant argues, the trial court properly held that the defendant retained the right to enter the plaintiff's property for purposes of sloping the lot as required by the town. We disagree with the defendant.

The defendant relies upon *Stankiewicz* v. *Miami Beach Assn., Inc.*, 191 Conn. 165, 171, 464 A.2d 26 (1983), for the proposition that "[a] grantee who takes under a deed referring to a map thus cannot justifiably look only to the map, but must consider it in conjunction with other deeds and documents comprising the chain of title."[6] The defendant's reliance upon *Stankiewicz*

---

[6] It must be noted that this court, in *Bolan* v. *Avalon Farms Property Owners Assn., Inc.*, 250 Conn. 135, 144, 735 A.2d 798 (1999), abandoned the unity of title doctrine, citing *Stankiewicz* as approving that doctrine. The defendant in the present case, however, does not rely upon *Stankiewicz* for the unity of title doctrine, which applied exclusively to easements. This court has not abandoned the rule for which *Stankiewicz* continues to stand: one cannot convey greater title than that which one possesses. *Stankiewicz* v. *Miami Beach Assn., Inc.*, supra, 191 Conn. 170.

is misplaced. In *Stankiewicz*, the court found that "[w]hen a conveyance describes the conveyed property by reference to a map on which streets are shown, an implied easement over the streets exists by law, if it exists at all, only if the conveyor in fact owns the streets." Id., 170. In that case, the defendant resort association was allowed to obstruct roads that had appeared on the map referred to in the plaintiff property owners' deed. The original grantor, however, had first conveyed the property containing the streets in question to the defendant, and then, nine years later, had conveyed the adjacent lot to the plaintiffs' predecessors in title. Id., 167. Thus, the plaintiffs did not have an implied easement in the streets contained in the defendant's lot. Id., 170.[7] The deed conveyed to the plaintiffs by the grantor erroneously referred to the identical map referred to in the deed conveyed to the defendant. Id., 168. The grantor, nine years previously, already had conveyed the property containing the streets to the defendant. Id., 167. "It is fundamental that a grantor cannot effectively convey a greater title than he possesses." Id., 170. Because the grantor already had conveyed to the defendant all his interest in the property containing the street in question, the plaintiff had no rights to the property despite the map recorded and referred to in the deed.

*Stankiewicz* is distinguishable from the present case. In the present case, the defendant is the original grantor of the property and has conveyed the lot in question only to the plaintiff. The town does not own the rights to the plaintiff's lot. If there is a question as to the town's rights regarding the subdivision as a whole, that is an issue for the town to pursue. The town, however,

---

[7] The lot in question was described as follows: "The defendant association owns the fee in Liberty Street and in those sections of Columbus and Washington Avenues north of Liberty Street. The portions of Columbus and Washington Avenues south of Liberty Street and which abut the plaintiffs' property are public highways." *Stankiewicz* v. *Miami Beach Assn., Inc.*, supra, 191 Conn. 166.

has not asserted any rights against either the defendant or the plaintiff. Indeed, the town engineer, James Sollmi, testified at trial that the town did not assert such rights and would do so only if and when the town council determined to exercise rights of eminent domain to obtain them. Although there is evidence that the town planning and zoning commission had imposed road requirements upon the defendant as developer, those requirements do not necessarily bind the plaintiff. Sollmi also testified that because the subdivision was bonded, the town could pursue an action against the defendant for failure to comply with the subdivision requirements. Because the town is not a party to the present action, the defendant is precluded from asserting claims against the plaintiff that could only exist—if they even do exist—on behalf of the non-party town.

We conclude that there was neither actual nor constructive notice of slope rights reserved to the defendant in the deeds to the property. We have determined that the trial court improperly concluded that the defendant was authorized to act on behalf of the town to enter the plaintiff's property in order to grade and slope the property in question pursuant to the subdivision plan. Accordingly, we affirm that portion of the trial court's judgment that determined that there was no reservation of slope rights and that the defendant was responsible for the damage to the plaintiff's trees and property. We reverse that portion of the trial court's judgment that granted the defendant permission to enter the plaintiff's property in order to act on behalf of the town. Because we conclude that the trial court's rulings were improper, we need not reach the issue as to whether the defendant's action constituted a taking of property without due process of law.

The judgment is reversed in part and affirmed in part and the case is remanded with direction to render

judgment for the plaintiff in accordance with the preceding paragraph.

In this opinion the other justices concurred.