[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MORANDUM OF DECISION
This matter came on pursuant to a motion for modification brought by the defendant dated February 28, 2000. Plaintiff had filed a motion for contempt dated February 14, 2000. Both matters were brought before this court on April 25, 2000 and were heard simultaneously pursuant to the requirements of C.G.S. § 46b-8[1].
 Background
The plaintiff and the defendant were married on December 14, 1973 and were divorced on July 16, 1996. At the time of their divorce, the parties filed financial affidavits that revealed that the defendant had a gross weekly income of $706, and that the plaintiff had a gross weekly income of $250.[2] Pursuant to the divorce decree, the defendant was ordered to pay $210 per week to the plaintiff for the support of the parties' two minor children.
On February 28, 2000, the defendant filed a motion to modify (#225) his child support obligation.[3]
 Modification Hearing
The defendant submitted a letter from his former employer, Union Camp Corporation (Union Camp), explaining that the plant the defendant was working at shut down in 1998. He also offered a layoff notice to the court which verified that he was laid off from Union Camp on December 18, 1998. According to the defendant, he was unemployed and received unemployment benefits from this time until November 1999. Finally, the CT Page 12060 defendant submitted his last twelve pay stubs as evidence of his.gross weekly income, including overtime pay.
The defendant testified that he had been a maintenance
The defendant testified that he had been a maintenance mechanic at Union Camp and that he is currently a maintenance mechanic at Federated Logistics (FedLog), where he began working in November 1999. He also testified that he works 40 hours per week plus overtime, and that he earns $440 per week gross income, plus an additional $25 per week overtime pay. Therefore, the defendant's total gross weekly income is $465. Based on this testimony, the defendant is currently earning $11 per hour at FedLog ($440/40 hours = $11 per hour)
On cross-examination, the defendant testified that he previously earned $14.50 per hour at Union Camp. When asked if he recalled making approximately $24 per hour at Union Camp, the defendant stated that he did not recall this. The plaintiff, however, submitted an income verification form to the court which supported her claim that the defendant earned approximately $24 per hour at Union Camp. Support Enforcement sent this form to Union Camp on November 9, 1998 requesting that certain wage information be provided for the defendant. The form was returned to Support Enforcement on November 13, 1998. Support Enforcement testified that such wage verifications are obtained in the normal course of business with the purpose of either contempt or motions to modify. Based on the income verification form, the defendant's gross weekly income while employed by Union Camp was approximately $960.
When questioned about job searches, the defendant testified that he inquired about jobs at Bic Corporation, Cheshire Electronics, Braxton Company, Highland Manufacturing and Truelove Maclean Incorporated. He also stated that the last time he sought employment at a higher hourly rate was when he got his present job. Thus, a fair and reasonable inference from this testimony is that the defendant is no longer looking for higher paying employment.
Upon being questioned about a potential worker's compensation claim, the defendant admitted that he pursued such a claim back in June 1999, but denied having any idea if his claim was still pending or if any settlement offers had been made. He did know, however, that his claim was not settled and that he had not yet received any specific disability orders. Finally, the defendant admitted that his financial affidavit did not include this claim.
When questioned about his personal assets, the defendant was less than forthright. He first indicated that his 1987 Buick automobile had CT Page 12061 been sold about a year earlier. But when asked how much money he received from the sale, the defendant stated that he gave the vehicle to his girlfriend. In fact, he thereafter indicated that he gave two other automobiles — a 1988 Chevy and a 1973 Dodge — to his girlfriend at about the same time as when he gave her the Buick. He made it clear that he did not sell these vehicles to his girlfriend and that he no longer owned them. Although he gave the Dodge to his girlfriend, he testified that he was still in possession of the vehicle and admitted that he failed to include this vehicle on his financial affidavit. Finally, the defendant testified that he also gave a Kawasaki motorcycle to his girlfriend and that he does not own it, but that the motorcycle is still on his premises.
 I. Motion for Modification
"Unless and to the extent that the decree precludes modification, any final order for the periodic payment of . . . support . . . may at any time thereafter be . . . modified by said court upon a showing of a substantial change in the circumstances of either party or upon a showing that the final order for child support substantially deviates from the child support guidelines. . . . There shall be a rebuttable presumption that any deviation of less than fifteen per cent or more from the child support guidelines is substantial. . . ." General Statutes § 46b-86
(a) "A party moving for a modification of a child support order must clearly and definitely establish the occurrence of a substantial change in the circumstances of either party that makes the continuation of the prior order unfair and improper." Savage v. Savage, 25 Conn. App. 693,696, 596 A.2d 23 (1991). See also Ribner v. Ribner, 6 Conn. App. 98,101, 503 A.2d 612 (1986) (The party seeking modification of a support order must `clearly and definitely' demonstrate the substantial change.") (Internal quotation marks omitted).
 II. Credibility
"It is well established that in a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony." (Internal quotation marks omitted.) Powers v. Olson, 252 Conn. 98, 105, 742 A.2d 799 (2000). This is so because `the trier of facts' assessment of the credibility of the witnesses [is] based on its firsthand observation of their conduct, demeanor and attitude." (Internal quotation marks omitted.) In re FeliciaB., 56 Conn. App. 525, 526, 743 A.2d 1160, cert. denied, 252 Conn. 952, CT Page 12062 748 A.2d 298 (2000). "The trial court . . . is not bound by the uncontradicted testimony of any witness . . . and is in fact free to reject such testimony." (Citations omitted.) In re Hector L.,53 Conn. App. 359, 366, 730 A.2d 106 (1999). Moreover, the trial court "has the right to accept part and disregard part of the testimony of a witness." Griffin v. Nationwide Moving Storage Co., 87 Conn. 405, 422,446 A.2d 799 (1982).
 III. Discussion
Although the defendant argued that the plaintiff's income substantially increased, he failed to present any documentary evidence, testimony or witnesses to support this claim. Nor do the parties' financial affidavits bear this out. The plaintiff's gross weekly income at the time of the divorce was $250 and her gross weekly income at the time of the final hearing on this motion was $283 — an increase of $33. This is hardly substantial. As such, the court finds the plaintiff's income has not substantially increased since the last order.
The court does not find any of the defendants' testimony credible. The defendant was only forthright when confronted with the truth on cross-examination He misled the court and the plaintiff with much of his testimony, as well as through the selective disclosure of assets on his financial affidavit.
More specifically, the defendant tried to deceive the plaintiff and the court by testifying that he sold one of his vehicles. When pressed about the money he received from this sale, the defendant admitted that he gave it to his girlfriend — along with two other automobiles and a motorcycle. He also admitted that he had possession of the motorcycle and one of the vehicles, although he no longer owned these items. According to his testimony, the defendant gave these items to his girlfriend approximately one year before the hearing. It should be noted that this would mean that he gave these assets away while he was allegedly unemployed and receiving unemployment benefits. Clearly, the defendant transferred title to these items solely to decrease the overall value of his assets as he received no remuneration for them and even retained use of the motorcycle and one of the vehicles.
Moreover, the court does not find credible the defendant's response that he did not recall how much he earned at Union Camp — considering it was his last job before his current employment and his salary there was over twice as much as his current salary. Additionally, he indicated that he has not looked for a higher paying job since he CT Page 12063 began his current employment in November 1, 1999, despite the fact that he is making less then half of what he formerly earned at Union Camp. He also failed to explain why his wages are so much lower at his current employment when he is supposedly performing the same job. The defendant provided the court with no explanation for his inability to find comparable work. Nor did he present any evidence to establish that such work was no longer available to him. Relatedly, the defendant failed to establish that his earning capacity has decreased. See Logan v. Logan,13 Conn. App. 298, 299-300, 535 A.2d 1332 (1988) ("Contrary to the plaintiff's claims on appeal, the court was well within its discretion in focusing on the lack of a change in her earning capacity, rather than on a change in her actual earnings. The plaintiff had the burden to establish the basis for the modification which she sought. A change in her actual earnings, even occurring without fault on her part, did not require the court to ignore the fact that she chose not to seek other employment or even to demonstrate that other suitable employment was unavailable to her. Under those circumstances, the plaintiff was required to establish that her earning capacity had changed substantially . . . She was not entitled to rest on the fact that her actual earnings had changed.") (Citation omitted).
Furthermore, the court does not find the defendant's testimony regarding his worker's compensation claim credible. He testified that he did not know if his claim was still pending or if any settlement offers had been made. Yet he testified that he knew that the case had not settled and that he had yet to receive any disability ratings. Additionally, the defendant admitted that he did not list this claim on his financial affidavit. His claimed lack of knowledge as to the status of his worker's compensation claim is incredulous given his previous attempts to have his child support obligation lowered based on his "total disability" stemming from this claim.
Based on the foregoing, the court finds that the defendant's earning capacity is at least equal to the amount he was earning at the time of the divorce (if not more) and, therefore, the court finds that his income has not substantially decreased. Additionally, the court finds that the plaintiff's income has not substantially increased since the divorce. Finally, the court finds that the defendant has failed to establish either of the required grounds (substantial change in circumstances or substantial deviation from the guidelines) for a modification of his child support obligation.
Based on the foregoing, the motion for modification is denied.
The issue of contempt has been resolved, therefore this court will not explore this matter any further. CT Page 12064
 Edmund H. Miller Family Support Magistrate