[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The two minor children involved in this ease are Shantel Kniffen (born October 29, 1985) and Christopher Gabriel (born December 18, 1990). The defendant, Deborah Kniffen, is the mother of both children and the plaintiff, Joseph Gabriel, is Christopher's biological father. Shantel's biological father is Thomas Kniffen, the defendant's former husband. (The defendant and Mr. Kniffen were divorced in 1976, approximately nine years before Shantel was conceived.) There is no dispute as to Shantel's parentage.
The parties were never married; rather, they lived together from September 1985, while Deborah was pregnant with Shantel, to November 1997, when they separated. At the time of the separation, both of the children primarily resided with the plaintiff. In July 1998, the plaintiff commenced an action for custody and support of both children, and the parties agreed that the children would continue to reside CT Page 1677 primarily with the plaintiff.
Approximately two years later, the defendant filed a motion to modify custody. On September 6, 2000, the court, Klaczak, J., granted the motion and transferred custody of the two children from the plaintiff to the defendant. More specifically, the court entered the following order: "The parties shall have joint legal custody of the two minor children, primary place of residence with the mother. Mr. Gabriel has been the de factofather to Shantel and the Court believes it is in her best interest that he have joint legal custody in order to facilitate an on-going relationship between the parties." (Emphasis added.) (Mem. of Dec., p. 5, Par. 1). Accordingly, the plaintiff was awarded visitation with both children. (See Mem. of Dec., p. 6, Par. 3, 5.) The plaintiff was also ordered to provide health insurance for both children, and the parties were ordered to share equally any unreimbursed medical expenses. (See Mem. of Dec., p. 7, Par. 16.) Finally, the court referred the issue of child support to the family support magistrate division. (See Mem. of Dec., p. 6, Par. 2.)
Neither party has appealed the trial court's decision. Rather, the plaintiff has objected to this court ordering child support for Shantel, claiming that he has no legal obligation to support her. A hearing regarding the plaintiff's objection was held on December 12, 2000.
 ISSUE
Should the doctrine of equitable estoppel be applied to impose a child support obligation on the plaintiff for Shantel?
 DISCUSSION
No case law was revealed in Connecticut or elsewhere which imposed a child support obligation on a person who did not acknowledge paternity of a child or who was never a stepparent to a child. However, one Connecticut Supreme Court case was found which expressly allowed the doctrine of equitable estoppel to be applied to impose a child support obligation on a stepparent. See W. v. W., 248 Conn. 487, 728 A.2d 1076
(1999). Although not directly on point, the factual scenario presented inW. v. W is analogous to the present case in that both cases deal with the imposition of a child support obligation on a nonparent. Additionally, the parties have relied extensively on W. v. W. in their briefs. Therefore, the undersigned shall apply the court's analysis in W. v. W. to the present case.
 DOCTRINE OF EQUITABLE ESTOPPEL
CT Page 1678
"There are two essential elements to an estoppel: the party must do or say something which is intended or calculated to induce another to believe in the existence of certain facts and to act upon that belief and the other party, influenced thereby, must actually change his position or do something to his injury which he otherwise would not have done. Estoppel rests on the misleading conduct of one party to the prejudice of the other. In the absence of prejudice, estoppel does not exist." (Internal quotation marks omitted.) W. v. W., supra, 248 Conn. 496-97. "[I]t is important to remember that when all of the elements of estoppel are met, its application prevents an injustice.' 497.
"In the context of parental responsibilities, the duty to support the child is placed fairly on the nonparental party, not solely because of his voluntary assumption of a parental role, but, also because of the misleading course of conduct that induced the child, and the biological parent as the child's guardian, to rely detrimentally on the nonparental party's emotional and financial support of the child." Id., 497-98. "[T]he natural parent invoking the doctrine [must] establish that, if the stepparent is not estopped, the children will suffer future financial detriment as a result of the stepparent's past active interference with the financial support by the child's natural parent . . . It is imperative for the stepparent to have taken positive steps of interference with the natural parent's support obligations in order for the court to bind the stepparent to support the children in the event of a divorce . . . Future economic detriment is established, for instance, whenever a custodial parent proves that he or she (1) does not know the whereabouts of the natural parent; (2) cannot locate the other natural parent; or (3) cannot secure jurisdiction over the natural parent for valid legal reasons, and that the natural parent's unavailability is due to the actions of the stepparent." (Citations omitted; emphasis in original; internal quotation marks omitted.) Id., 502. As such, "the equitable estoppel doctrine properly imposes a burden on the party seeking to invoke the doctrine to demonstrate representations of financial as well as emotional support." Id.
"[A]s with other domestic issues, in deciding whether to apply the doctrine of equitable estoppel, courts must act judiciously and with sensitivity to the facts particular to each case . . . [E]quitably estopping parties from denying parenthood is an extraordinary measure because it involves a judicially created imposition of parental status and attendant responsibility." (Citation omitted.) Id., 503-04.
 FINDINGS OF FACT
Both parties testified at the December 12, 2000 hearing. No other witnesses or evidence was presented. "It is well established that in a CT Page 1679 case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony." (Internal quotation marks omitted.) Powers v. Olson,252 Conn. 98, 105, 742 A.2d 799 (2000). This is so because "The trier of facts' assessment of the credibility of the witnesses [is] based on its firsthand observation of their conduct, demeanor and attitude." (Internal quotation marks omitted.) In re Felicia B., 56 Conn. App. 525, 526,743 A.2d 1160, cert. denied, 252 Conn. 952, 748 A.2d 298 (2000). "The trial court. . . . is not bound by the uncontradicted testimony of any witness . . . and is in fact free to reject such testimony." (Citations omitted.) In re Hector L., 53 Conn. App. 359, 366, 730 A.2d 106 (1999). Moreover, the trial court "has the right to accept part and disregard part of the testimony of a witness." Griffin v. Nationwide Moving Storage Co., 187 Conn. 405, 422, 446 A.2d 799 (1982). The court finds that neither party was entirely credible. However, in evaluating the testimony presented, the court further finds that the plaintiff was a more credible witness than the defendant on many of the key facts in issue.
Based on the testimony elicited at the hearing, the court finds the following facts:
Mr. Kniffen is listed as Shantel's father on her birth certificate, and she bears his surname. Both the plaintiff and Mr. Kniffen were present at Shantel's birth. Approximately three days after Shantel was born, the plaintiff, the defendant and Mr. Kniffen agreed that they would "cut ties," and that the plaintiff and the defendant would raise Shantel.
When Shantel was approximately one and one-half years old, the defendant called Mr. Kniffen and requested that he "give up his legal rights" to Shantel, but he refused. She then went to a support enforcement office for information regarding the establishment of a child support obligation against Mr. Kniffen for Shantel. The defendant discussed the information she received from the support enforcement office with the plaintiff. The parties decided not to pursue an order against Mr. Kniffen because "they were a family;" they did not want Mr. Kniffen in their lives and the plaintiff felt as though he was Shantel's father.
Shantel knows that Mr. Kniffen is her biological father, but she also considers the plaintiff to be her father. Even so, she calls both the plaintiff and Mr. Kniffen "Dad." Shantel first visited with Mr. Kniffen when she was approximately 5 years old. From that point on, she has had an ongoing parent-child relationship with Mr. Kniffen. Mr. Kniffen visits Shantel when he travels to the Northeast, and she has visited him at his home in Florida. Shantel has also developed relationships with her CT Page 1680 paternal grandparents and uncle.
Mr. Kniffen sends Shantel birthday and Christmas gifts, and has paid for her dance lessons, among other things. More importantly, however, the defendant and Mr. Kniffen have had an informal agreement whereby Mr. Kniffen provides the defendant with money for Shantel's support. Additionally, the defendant has always been aware of Mr. Kniffen's whereabouts and knows where he currently resides.
 ORDER
Based on the foregoing, the court finds that the plaintiff's actions were intended or calculated to induce Shantel and the defendant to believe that he would always emotionally and financially support Shantel. The plaintiff was present when Shantel was born and immediately after her birth indicated his desire to raise her with the defendant. He then proceeded to do so for fifteen years (twelve with the defendant and three as the primary custodian). The plaintiff felt as though he were Shantel's father and that they were a family. He also did not want Mr. Kniffen in their lives notwithstanding his periodic visits to see the child. While Shantel knows that Mr. Kniffen is her biological father, she considers the plaintiff to be her father and calls him "Dad."
However, it is further found that Shantel and the defendant did not rely on the plaintiff's assurances to their emotional or financial detriment. Shantel has maintained an ongoing parent-child relationship with Mr. Kniffen for approximately ten years. She has visited Mr. Kniffen at his home in Florida; he visits her when he travels to the Northeast; she bears his surname; she knows he is her biological father; and she calls him "Dad." Moreover, Shantel has established relationships with her paternal grandparents and uncle.
Additionally, Shantel will not suffer future financial detriment. Although the parties made a joint decision not to establish a child support obligation against Mr. Kniffen, Mr. Kniffen has paid the defendant money over the years for Shantel's support pursuant to an informal agreement between himself and the defendant. More importantly, the defendant has always known the identity of Shantel's biological father and his whereabouts. She also knows where Mr. Kniffen is currently residing. As such the defendant can establish a child support obligation against Mr. Kniffen on behalf of Shantel.
Based upon the foregoing findings, the court finds that the doctrine of equitable estoppel should not be applied in this instance to impose a child support obligation on the plaintiff for Shantel. In other words, the conduct of the plaintiff did not result in prejudice to the CT Page 1681 defendant.
The matter is continued to February 27, 2001 for the entry of final orders of support for the minor child Christopher and on the contempt with regard to arrearages owed by the defendant.
M. Christine Burt Family Support Magistrate