## HOTSHOE ENTERPRISES, LLC, ET AL. *v.* CITY OF HARTFORD*

Superior Court, Judicial District of New Britain, Tax Session
File No. CV-054007951S

Memorandum filed November 30, 2006

*Peter R. Reynolds*, for the plaintiffs.

*John Rose, Jr.*, corporation counsel, for the defendant.

HON. ARNOLD W. ARONSON, JUDGE TRIAL REFEREE. This action is an appeal brought pursuant to General Statutes § 12-119[1] by fourteen plaintiffs, including the named plaintiff, Hotshoe Enterprises, LLC, owners of condominium hangar units located at Brainard

---

* Affirmed. *Hotshoe Enterprises, LLC* v. *Hartford*, 284 Conn. 833, 937 A.2d 689 (2008).

[1] General Statutes § 12-119 provides in relevant part: "When it is claimed that a tax has been laid on property not taxable in the . . . city in whose tax list such property was set, or that a tax laid on property was computed on an assessment which, under all the circumstances, was manifestly excessive and could not have been arrived at except by disregarding the provisions of the statutes for determining the valuation of such property, the owner thereof . . . prior to the payment of such tax, may . . . make application for relief to the superior court . . . ."

Airport (airport) in the defendant city of Hartford (city), challenging the imposition of property taxes on the plaintiffs' unit ownership in the leasehold condominium units for the grand list of October 1, 2004.

The plaintiffs filed a motion for summary judgment and the defendant filed a cross motion for summary judgment, both conceding that there are no material facts in issue and that each is entitled to judgment as a matter of law.

The state owns and operates the airport in the city. On December 19, 2003, Connecticut Hangars, LLC (Connecticut Hangars), entered into a lease agreement with the department of transportation (department) concerning a parcel of land within the airport containing approximately 315,885 square feet for the construction, maintenance and management of aircraft hangars pursuant to General Statutes § 13b-42 (b).[2] The lease provided for Connecticut Hangars, as lessee, to build and develop six hangar buildings for the storage of aircraft and aircraft equipment through a common interest community and to sell units in the community as a leasehold condominium.

The lease further provided that "[t]he State does hereby grant to [Connecticut Hangars], its agents, employees, contractors, business invitees and guests, the right of access to and from the Leased Premises and to the public areas of the Airport and to those portions of the operations area of the Airport including

[2] General Statutes § 13b-42 (b) provides in relevant part: "With the approval of the Attorney General, the Secretary of the Office of Policy and Management and the State Properties Review Board, *the commissioner [of transportation] may sell or lease or grant any interest in any airport or airport site or any part thereof, hangars, shops or other buildings or other property owned or held under lease by the state* . . . . Leases of land of the state shall be for periods determined by the commissioner with the approval of the State Properties Review Board and may provide for the construction of buildings on the land. . . ." (Emphasis added.)

taxiways, runways, and other areas necessary for the operation of aircraft and maintenance of the Leased Premises and incidental and necessary for the use of the property as granted and permitted in this Lease. All such access shall be under the supervision and instruction of the Airport Manager."

The term of the lease between the state and Connecticut Hangars is for thirty years from August 9, 2001, and terminates on August 31, 2031, with an option to extend for two additional five year periods. The lease provides for monthly rental payments to be made by Connecticut Hangars to the state based upon a cost per square foot of the leased premises. Article two of the lease regarding the construction of the hangars contained the following terms:

"E. Title to all materials purchased for construction of the facility shall vest in the State and [Connecticut Hangars] shall have no property rights therein or in the Facilities except the right to occupy and use the Leased Premises and associated ramps and other areas of the Airport under the terms of this Lease.

\* \* \*

"P. The parties mutually agree that all real property, including, but not limited to the Facilities, improvements, fences, lighting, protection devices, sidewalks and/or paved areas, constructed or installed by [Connecticut Hangars], shall become and remain the property of the State."

On May 24, 2004, Connecticut Hangars executed a condominium declaration creating a leasehold common interest community, pursuant to the Common Interest Ownership Act, General Statutes § 47-200 et seq., known as Connecticut T-Hangar Condominium, a leasehold condominium. The declaration provides that the real property of the condominium is subject to a lease from

the state, the termination of which will terminate the common interest community and that the declaration is subject to and subordinate to the terms and conditions of the lease.

Following the creation of the common interest community, Connecticut Hangars conveyed to the plaintiffs, by various warranty deeds, unit ownership of designated hangar units of the leasehold condominium. The prices for individual hangar units ranged from approximately $48,000 to $60,000. The warranty deeds conveyed a partial assignment of Connecticut Hangars' interest in the lease agreement between the state as landlord and Connecticut Hangars as tenant, including an undivided interest in the percentage of the unit's share of the common elements.

Each warranty deed further recited: "Together with and subject to the terms, covenants, restrictions, easements, grants, by-laws, rules and regulations, encumbrances and all other matters, all as set forth or referenced in the Declaration of Condominium, and in the surveys, plans and exhibits referred to therein, as the same may be amended from time to time, including, without limitation, the specific obligation of the Grantee to convey the Unit and its appurtenant interests in the Condominium to the Grantor, its successors or assigns, for One Dollar ($1.00), free and clear of all liens and other encumbrances except those set forth in the Declaration of Condominium, as set forth more particularly in Section 28.6 of the Declaration, within thirty (30) days prior to the expiration of the thirtieth (30th) year of the Lease term."

It is the plaintiffs' position that the language in General Statutes § 12-64 (c) precludes the city from imposing property taxes on their condominium leasehold interests in the airport's hangar space.

Subsection (c) of § 12-64 provides in relevant part as follows: "The provisions of subsection (b)[3] of this section shall not be applicable to any land, building or easement belonging to or held in trust for the state of Connecticut at (1) Bradley International Airport [Bradley] or any other state-owned airport, and (2) any restaurant, gasoline station or other service facility or public convenience as may be deemed appropriate by the [department] for state highway, mass transit, marine or aviation purposes. . . ." General Statutes § 12-64 (c).

The city raises several points in support of its position that the taxes imposed on the plaintiffs' hangar properties were proper. The city cites to *Fanny J. Crosby Memorial, Inc.* v. *Bridgeport*, 262 Conn. 213, 220, 811 A.2d 1277 (2002), and *H.O.R.S.E. of Connecticut, Inc.* v. *Washington*, 258 Conn. 553, 560, 783 A.2d 993 (2001), to state the law generally that, because the plaintiffs claim an exemption from property taxes pursuant to § 12-64 (c), the burden of proving entitlement to this exemption rests upon the plaintiffs and that " '[t]he general rule of construction in taxation cases is that provisions granting a tax exemption are to be construed strictly against the party claiming the exemption.' "

The city further contends that § 12-64 (c) is inapplicable here because the plaintiffs each own a taxable property right by virtue of receiving warranty deeds to their individual hangars at the airport, not because of the lease from the state to Connecticut Hangars. The foundation of the city's argument is that, under *Fanny J.*

[3] General Statutes § 12-64 (b) provides in relevant part: "Except as provided in subsection (c) of this section, any land, buildings or easement to use air rights belonging to or held in trust for the state, not used for purposes attributable to functions of the state government or any other governmental purpose but leased to a person or organization for use unrelated to any such purpose, exclusive of any such lease with respect to which a binding agreement is in effect on June 25, 1985, shall be separately assessed in the name of the lessee and subject to local taxation annually in the name of the lessee having immediate right to occupancy of such land or building . . . ."

*Crosby Memorial, Inc.* v. *Bridgeport,* supra, 262 Conn. 220–21, there are three criteria for determining whether property is exempt from tax, namely: (1) the property must belong to or be held in trust for an organization exempt from taxation; (2) it must be held for one of the purposes stated in the statute's list of exemptions; and (3) it must produce no rents, profits or income.

The city, in applying the standards set out in *Fanny J. Crosby Memorial, Inc.*, acknowledges that the statute being construed in that case was General Statutes § 12-81, not § 12-64 (c), but contends that the same criteria apply in measuring a claim for a tax exemption.

With regard to the first criteria in *Fanny J. Crosby Memorial, Inc.*, the city asserts that the conveyance of the hangars by warranty deed confirmed that an estate in fee simple defeasible, subject to a fixed durational period of time, was conveyed.

The city further claims that "[f]or so long as the unit owners—the plaintiffs—have title to the condominium units, they may be taxed. Had the state and Connecticut Hangars simply caused subleases—all as allowed by the lease—to be had as between Connecticut Hangars . . . and the plaintiffs, there would be no issue of taxability. . . . Here, the unit owners all have an interest in the underlying fee, as well as an interest in the lease." Therefore, the essence of the city's argument is that the conveyance of a condominium leasehold unit by warranty deed is a conveyance of a taxable property interest.

In resolving this issue, it is necessary to review the lease between the state and Connecticut Hangars, the terms of which set out the original creation of rights that permitted the conveyance of the condominium hangar units. As discussed previously, the lease specifically provides that any buildings and improvements made by

Connecticut Hangars shall vest in the state and Connecticut Hangars shall have "no property rights therein or in the Facilities except the right to occupy and use the Leased Premises . . . ."

When Connecticut Hangars created the condominium of hangar units, it did so as a tenant for the specified term of years provided for in the lease, not as an owner of the fee. In recognition of the lease, article twenty-eight of the condominium declaration regarding the leasehold property provides that "[w]ithin thirty (30) days prior to the expiration of the Lease term, each Unit Owner is obligated to offer to convey his Unit and its appurtenant interest in the Condominium to the Declarant prior to the expiration of the Lease for One Dollar ($1.00), free and clear of all liens and other encumbrances except those set forth in Schedule A hereto." Declaration of Condominium § 28.6. The warranty deeds conveying the subject hangars recite the provisions of § 28.6 of the declaration of condominium. See also id., § 28.7 ("[u]nit [o]wners have no right to renew the [l]ease or extend its term").

The city recognizes that Connecticut Hangars obtained its interest in the subject property by virtue of a lease from the state. A lease is not a conveyance of title to land, but, rather, a granting of possession of the land. "A lease transfers an estate in real property to a tenant for a stated period, with a reversion in the owner after the expiration of the lease. Its distinguishing characteristic is the surrender of possession by the landlord to the tenant so that he may occupy the land or tenement leased to the exclusion of the landlord himself." (Internal quotation marks omitted.) *Monarch Accounting Supplies, Inc.* v. *Prezioso*, 170 Conn. 659, 663, 368 A.2d 6 (1976). As a lessee, Connecticut Hangars could grant no greater right than it already had, that of a possessor of land, not a titleholder. "It is fundamental

that a grantor cannot effectively convey a greater title than he possesses." (Internal quotation marks omitted.) *Powers* v. *Olson*, 252 Conn. 98, 110, 742 A.2d 799 (2000). As discussed previously herein, the lease between the state and Connecticut Hangars clearly recites that no interest in the fee other than possession was being granted to the lessee.

The second part of the city's argument is that the lease arrangement between the state as landlord and Connecticut Hangars as tenant, and the subsequent deeds of the condominium hangar units to the plaintiffs, comprise a profitmaking venture inconsistent with the third element in *Fanny J. Crosby Memorial, Inc.*, which is that a tax exempt property must not produce rents, profits or income. This argument, however, highlights the fundamental difference between the issue in this case, dealing with § 12-64 (c), and the issue in *Fanny J. Crosby Memorial, Inc.*, dealing with § 12-81. General Statutes §§ 12-81 and 12-88 describe charitable property deemed exempt from taxation if certain conditions are satisfied, such as property "not to be leased, rented or otherwise used for a purpose other than the furtherance of its charitable purposes . . . ." See *Isaiah 61:1, Inc.* v. *Bridgeport*, 270 Conn. 69, 76–77, 851 A.2d 277 (2004).

An analysis of § 12-64 (c) shows that it is not an exemption statute dealing with charitable uses, but, rather, a specific exemption granted to lessees of property at state owned airports. Section 12-64 (a) is the basic statutory section providing that "[a]ll the following-mentioned property, not exempted . . . shall be liable to taxation . . . ." Section 12-64 (b) recites that, except as provided in subsection (c), property that is owned by the state and leased to a person or organization that does not use the state property for governmental purposes "shall be separately assessed in the name of the lessee and subject to local taxation annually in the name of the lessee having immediate right to

occupancy of such land or building . . . ." In contrast to subsection (b), § 12-64 (c) allows the state to lease property at a state owned airport without being subject to a municipal property tax.

Number 85-448 of the 1985 Public Acts, entitled "An Act Providing for Payment of Property Taxes by a Lessee of State-Owned Real Property Used for Purposes Unrelated to Any Governmental Function," amended § 12-64 by adding subsection (c) to provide an exception when the lease of state property serves a governmental purpose. A review of the relevant legislative history reveals that Representative Linda Emmons discussed how the same bill previously had passed both chambers of the legislature, only to be vetoed by the governor "because of the last section relative to leased property at Bradley . . . and also the fact that they were going into new rent agreements at Bradley . . . . Those have all been consummated and the section that [the governor] was concerned about has been amended to include, or to exclude, Bradley . . . and other [department] facilities." 28 H.R. Proc., Pt. 22, 1985 Sess., p. 444. Representative Emmons further stated that "what the bill will call for is where the state owns buildings and rents out space in buildings for purposes that are not governmentally related, such as a dress shop in a commercial building, that particular part of the building would be, could be assessed, by the local community in which the property is located." Id., pp. 444–45.

Before the finance, revenue and bonding committee, however, William Lazarek, the deputy commissioner of transportation, spoke in "very, very strong opposition" to the bill subsequently enacted as Public Act 85-448. Conn. Joint Standing Committee Hearings, Finance, Revenue and Bonding, 1985 Sess., Pt. 1, p. 64. Lazarek's comments primarily related to the leases entered into by the department for services provided by commercial interests at Bradley, but also included state highway

service facilities. He stated that "if this bill were to pass, it could have a devastating effect on the whole revenue bonding situation that we set up at Bradley." Id., p. 63. Lazarek was concerned that the department had entered into leases for services provided by commercial users at Bradley and that if they were to become subject to property taxes, the leases would have to be renegotiated to account for the taxes, to the state's detriment. Lazarek added that "a great deal of the lessees up at Bradley are needed up there to support the airport." Id.

A colloquy between Representative Emmons and Lazarek is especially noteworthy:

"[Representative Emmons]: There are airplanes that are hangared there . . . are they subject to a personal property tax?

"[Lazarek]: No, they are not because [that] is considered an aviation use and directly related to the function of the airport." Id., p. 68.

In *Harrisburg-Raleigh Airport Authority* v. *Dept. of Revenue*, 126 Ill. 2d 326, 331, 533 N.E.2d 1072 (1989), the Supreme Court of Illinois decided a similar issue: whether twenty hangars, owned by an airport authority and leased to private individuals for storage of their private aircraft, were used for " 'Airport Authority purposes' " as provided for under Illinois law, which would exempt the hangars from taxation. The court discussed § 19.20 of the Illinois Revenue Act of 1939 and stated that the statute provided tax exempt status for " '[a]ll property of every kind belonging to any Airport Authority and used for Airport Authority purposes.' " Id. In affirming the lower court's judgment in favor of the plaintiff, the court in *Harrisburg-Raleigh Airport Authority* concluded that "[t]he General Assembly's inclusion of a separate exemption for airport-authority uses suggests that this exemption is to be construed at least broadly enough to encompass private uses of

airport-authority property which bear a real and substantial relation to the authority's statutory purpose of maintaining a public airport." Id., 336.

From the foregoing analysis, it is clear that the subject hangars at Brainard Airport are exempt from municipal property taxes pursuant to § 12-64 (c), which exempts from taxation property located on a state owned airport and leased to private individuals. The plaintiffs are in possession of the hangars by virtue of the lease from the state to Connecticut Hangars, not by virtue of the warranty deeds from Connecticut Hangars.

Accordingly, for the foregoing reasons, the plaintiffs' motion for summary judgment is granted, sustaining their appeal, and the defendant's cross motion for summary judgment is denied. Judgment may enter in favor of the plaintiffs without costs to either party.